IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRANDON KELLY, on behalf of himself and all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No.: _____ |
| v. | ) ) | Collective and Class Action |
| HOSPITALITY VENTURES LLC, d/b/a UMSTEAD HOTEL AND SPA, NC CULINARY VENTURES LLC, d/b/a ÃN ASIAN CUISINE, SAS INSTITUTE INC., and ANN GOODNIGHT, | ) ) ) ) ) | **COMPLAINT** |
| *Defendants*. | | |

COMES NOW, Brandon Kelly ("Named Plaintiff"), on behalf of himself and all others similarly situated (collectively "Named, Opt-In, and Putative Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective/class action against Defendants Hospitality Ventures LLC, d/b/a Umstead Hotel and Spa, NC Culinary Ventures LLC, d/b/a ÃN Asian Cuisine, SAS Institute Inc., and Ann Goodnight (collectively "Defendants"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.     This action is brought individually and as a collective action for unpaid minimum wages, unpaid overtime compensation, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  Defendants had a systemic company-wide policy, pattern, or practice of failing to pay their employees at the appropriate statutory rate for hourly work, or for hours worked in excess of forty (40) each week at a rate of one and one-half (1.5) their regular rate of pay.

2.     This action is also brought individually and as a class action for invalid and/or unauthorized deductions from wages, payment of all owed and promised wages, and for other relief as appropriate, under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*.

3.     Defendants' pay practices and policies were in direct violation of the FLSA and the NCWHA.  Accordingly, Named, Opt-In, and Putative Plaintiffs seek unpaid straight-time compensation, unpaid overtime compensation, and illegally withheld and misappropriated tips or wages, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

4.     In addition, both Named and Opt-In Plaintiffs seek to recover additional economic, non-economic, and punitive damages, as well as equitable relief and all other relief deemed appropriate, for their individual claims of retaliation under 29 U.S.C. § 215, following discussions with Defendants related to the underlying facts of this lawsuit, and the subsequent filing of this lawsuit.

## JURISDICTION AND VENUE

5.     This Court has federal question jurisdiction pursuant to 29 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

6.     The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendants conducted business in Wake County, North Carolina, which is located within this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conducted business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

8. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

9. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative fact as the FLSA claims.

10. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

11. Named Plaintiff is an adult resident of the State of North Carolina, residing at 6233 Tributary Drive, Raleigh, North Carolina 27609. He worked for Defendants from approximately June, 2010, until January 30, 2017.

12. Named Plaintiff worked as an hourly server for Defendants, waiting on customers and providing diners with upscale service and a fine dining experience.

13. The FLSA collective action Opt-In and Putative Plaintiffs consist of individuals who have worked for Defendants (either as separate or joint employers), at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b) until January 30, 2017, who were non-exempt employees paid a direct hourly wage of less than the minimum wage, and who were required to participate in ĀN Asian Cuisine's illegal mandatory tip pool, including, but not limited to, servers, server assistants, runners, and bartenders.

14. The NCWHA Rule 23 proposed class action members consist of individuals who have worked for Defendants (either as separate or joint employers), at any time within the two (2) year period prior to the filing of this lawsuit, who were non-exempt employees paid a direct hourly wage of less than the minimum wage, and who were required to participate in ĀN Asian Cuisine's illegal mandatory tip pool, including, but not limited to, servers, server assistants,

runners, and bartenders.

15.     Defendant Hospitality Ventures LLC ("Umstead Hotel and Spa"), d/b/a Umstead Hotel and Spa, has been in business since 2004, and is located at SAS Campus Drive, Cary, North Carolina 27513.

16.     Defendant NC Culinary Ventures LLC ("ÃN Asian Cuisine"), d/b/a ÃN Asian Cuisine, is an extension of Defendant Umstead Hotel and Spa, offering customers a fine dining experience with authentic Asian cuisine.  Defendant ÃN Asian Cuisine has been in business since 2004, and is located at 100 Matrix Drive, Box 8000, Cary, North Carolina 27513.

17.     Defendant SAS Institute Inc. ("SAS") is an American multinational developer of analytics software based in Cary, North Carolina.  Defendant SAS is located at SAS Campus Drive, Cary, North Carolina 27513.

18.     Defendant Ann Goodnight founded Defendant ÃN Asian Cuisine.  Defendant Ann Goodnight is located at 2626 N Lumina Ave 16, Wrightsville Beach, North Carolina 28480.

19.     Upon information and belief, during the time period relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Named, Opt-In, and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named, Opt-In, and Putative Plaintiffs, and each Defendant received the benefit of Named, Opt-In, and Putative Plaintiffs' labor.  More information about the nature and role of each Defendant within the enterprise is provided below.

## COVERAGE

20.     At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Named, Opt-In, and Putative

Plaintiffs.

21.     At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

22.     At all times material to this action, Named, Opt-In, and Putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

23.     At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

24.     At all times material to this action, Defendants were joint employers pursuant to 29 C.F.R. § 791.2.

25.     At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS

26.     Defendants owned and operated a restaurant, ÃN Asian Cuisine, in Cary, North Carolina, whose mission was to provide food and hospitality services to the public.

27.     Named Plaintiff worked as a server at Defendants' restaurant, and earned the title "captain," providing him with general oversight of other wait staff in the restaurant.

28.     Named Plaintiff earned at least one "Employee of the Year Award" throughout

the course of his employment.

29.     As a server, Named Plaintiff was responsible for interacting with customers, taking orders, and serving food and beverages, among other duties.  Named Plaintiff did not have any authority or discretion over the hiring and firing of other employees, nor could he have effectively recommended the hiring, firing, advancement, promotion, or other change of status of other employees.  Named Plaintiff's duties also did not include management of the business or any subdivision thereof, and he did not evaluate or discipline, set hours of work or rates of pay, or direct the work of other employees.

30.     Named Plaintiff typically worked six (6) days per week, equating to about fifty (50) hours per week.  Opt-In and Putative plaintiffs also typically worked in excess of forty (40) hours per week.

31.     Named, Opt-In, and Putative Plaintiffs worked as non-exempt employees at Defendants' restaurant.

32.     Defendants controlled the work schedule and rate of pay for Named, Opt-In, and Putative Plaintiffs.

33.     Defendants paid Named, Opt-In, and Putative Plaintiffs a direct hourly wage below the statutory minimum wage by taking the "tip credit" under the FLSA, 29 U.S.C. § 203(m).

34.     Defendants used Named, Opt-In, and Putative Plaintiffs' tips as wages in order to satisfy the remainder of their statutory minimum wage obligations.  In other words, consistent with Fourth Circuit Court of Appeals authority, Defendants utilized the tip credit, and therefore Named, Opt-In, and Putative Plaintiffs' tips constituted wages.

35.     Defendants paid Named, Opt-In, and Putative Plaintiffs overtime at a rate of one

and one-half (1.5) their aforementioned direct hourly wage rate, which was below the statutory minimum wage, due to Defendants' taking of the tip credit under the FLSA, 29 U.S.C. § 203(m).

36.     Defendants used Named, Opt-In, and Putative Plaintiffs' tips as wages in order to satisfy the remainder of their statutory overtime obligations.  In other words, consistent with Fourth Circuit Court of Appeals authority, Defendants utilized the tip credit, and therefore Named, Opt-In, and Putative Plaintiffs' tips constituted wages.

37.     Defendants utilized a mandatory tip pool to reduce their labor costs and supplement the compensation that they pay to non-customarily tipped or supervisory employees.

38.     Defendants required Named, Opt-In, and Putative Plaintiffs to remit a set percentage of their tips/wages into their mandatory tip pool.

39.     Defendants included, in their mandatory tip pool, employees who were not customarily and regularly tipped employees, in direct contravention of requirements under the FLSA, 29 U.S.C. § 203(m).

40.     Sushi chefs were among the tip pool participants, in Defendants' mandatory tip pool, who were not customarily and regularly tipped employees within the scope of the FLSA, 29 U.S.C. § 203(m).

41.     Sushi chefs, while operating at a bar that was visible to customers, rarely, as part of their job duties, took orders from customers, served customers, or interacted with customers.

42.     Sushi chef helpers were also among the tip pool participants, in Defendants' mandatory tip pool, who were not customarily and regularly tipped employees within the scope of the FLSA, 29 U.S.C. § 203(m).

43.     Sushi chef helpers only assisted sushi chefs in preparing food, and rarely, if ever, interacted with customers.  Most sushi chef helpers did not speak English, rendering their ability

to interact with customers even more faint.

44.     An individual employee, Nicholas Papas ("Papas"), was also among the tip pool participants, in Defendants' mandatory tip pool, who was not a customarily and regularly tipped employee within the scope of the FLSA, 29 U.S.C. § 203(m).

45.     Papas, while technically entitled "expediter," had job duties that were largely supervisory and managerial in nature, and was viewed and treated as a managerial employee by other employees in the restaurant.

46.     Among Papas' supervisory/managerial duties included access to managerial offices and computer software; oversight of all kitchen operations and staff; responsibility for checking kitchen staff in and out; responsibility for closing the kitchen each evening; and earning of direct wages substantially higher than all other tipped employees. Further, when Papas took a day off or was otherwise unavailable, his job duties were filled entirely by Michael Golder, a manager at the restaurant.

47.     Papas' supervisory/managerial status rendered him not a customarily and regularly tipped employee within the scope of the FLSA, 29 U.S.C. § 203(m).

48.     Papas was also a purely back-of-the-house employee, who was neither visible nor otherwise known to customers.

49.     As part of his duties, Papas was never in the front of the restaurant. Instead, Papas spent all of his time in the kitchen, attended kitchen line-ups each day (which no front-of-the-house employee attends), never ran food, was listed on the back-of-the-house schedule, and wore typical kitchen attire, including an apron. He rarely, if ever, communicated or had direct interaction with customers.

50.     In 2017, Papas was awarded the "Back-of-the-House Employee of the Quarter

Award" for his work done in the third or fourth quarter of 2016.

51.     Papas' back-of-the-house status rendered him not a customarily and regularly tipped employee within the scope of 29 U.S.C. § 203(m).

52.     Upon information and belief, Defendants used tips earned by Named, Opt-In, and Putative Plaintiffs to offset their ordinary business expenses.  In part, Defendants used the tips of Named, Opt-In, and Putative Plaintiffs to reduce their business and employment costs by having Named, Opt-In, and Putative Plaintiffs supplement the compensation that Defendants paid to their other non- customarily tipped or supervisory employees.

53.     Upon information and belief, Defendants have internally investigated similar mandatory surrendering of tip issues in the past, including the taking of tips by employees who were not customarily tipped employees, and have thereafter terminated the employment of at least one employee connected with the tip misappropriation, and retroactively compensated other employees for their surrendered tips, including Named Plaintiff and some Putative Plaintiffs, in an effort to resolve the similar issues.

54.     Defendant ÃN Asian Cuisine's compensation system was also the subject of an FLSA/NCWHA lawsuit in 2011, in the case of *Buckner v. North Carolina Culinary Ventures, LLC*, No. 5:10-CV-583 (E.D.N.C. 2011).

55.     In the previous action, Defendant ÃN Asian Cuisine faced challenges related to their straight-time wage violations, overtime violations, and improper tip pooling arrangement, including the presence of managers and/or employees who were not customarily or regularly tipped employees.  They also faced challenges related to retaliatory acts.  The case was settled briefly after its inception.

56.     Defendants closed the ÃN Asian Cuisine restaurant on January 30, 2017, for

undisclosed reasons.

57.     Defendants have willfully violated the statutory rights of Named, Opt-In, and Putative Plaintiffs under both the FLSA and the NCWHA, resulting in damages to Named, Opt-In, and Putative Plaintiffs in the form of unpaid straight-time wages, unpaid overtime wages, and misappropriated tips/wages, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## COMMON BUSINESS PRACTICES AND JOINT EMPLOYMENT FACTUAL ALLEGATIONS

58.     Defendant ÃN Asian Cuisine's website explicitly stated that it was an extension of Defendant Umstead Hotel and Spa.  *See ÃN Asian Cuisine*, http://ancuisines.com/ (last visited January 24, 2017).

59.     Staff of Defendant ÃN Asian Cuisine and Defendant Umstead Hotel and Spa held regular meetings, comprised of General Managers from both parties, Executive Chefs from both parties, and the Finance Director of Defendant Umstead Hotel and Spa, who concurrently managed the finances of Defendant ÃN Asian Cuisine.

60.     Defendant ÃN Asian Cuisine and Defendant Umstead Hotel and Spa shared employees, including, but not limited to, the Culinary Director of Defendant ÃN Asian Cuisine, Steven D. Greene, who acts as Executive Chef at a separate restaurant located on Defendant Umstead Hotel and Spa's premises.

61.     Upon information and belief, staff at Defendant Umstead Hotel and Spa handled administrative tasks for Defendant ÃN Asian Cuisine.

62.     Upon information and belief, when Defendant ÃN Asian Cuisine was short-handed on staff, employees from Defendant Umstead Hotel and Spa filled managerial positions, an occurrence that took place at certain times for multiple-month periods.

63. When Named, Opt-In, and Putative Plaintiffs had issues related to their employment, they were instructed by managers at Defendant ĀN Asian Cuisine to speak with the Human Resources Department of Defendant Umstead Hotel and Spa. In particular, they were often instructed to contact the Human Resources Director of Defendant Umstead Hotel and Spa, Kathy Brown.

64. When Named, Opt-In, and Putative Plaintiffs had questions or concerns regarding their salary, they were instructed by managers at Defendant ĀN Asian Cuisine to speak with the Finance Department of Defendant Umstead Hotel and Spa.

65. When complaints were made by customers against Named, Opt-In, and Putative Plaintiffs, such complaints were handled by staff of Defendant Umstead Hotel and Spa. Upon information and belief, the Executive Chef of the restaurant on the premises of Defendant Umstead Hotel and Spa attended these meetings, along with employees of both Defendant ĀN Asian Cuisine and Defendant Umstead Hotel and Spa.

66. A large portion of the tools and equipment essential for Named, Opt-In, and Putative Plaintiffs to perform their jobs was supplied to Defendant ĀN Asian Cuisine by Defendant Umstead Hotel and Spa, and then distributed to Named, Opt-In, and Putative Plaintiffs as needed. These included, but were not limited to, power washers, dishware, a moveable bar, and hot tea packets that displayed the name and insignia of Defendant Umstead Hotel and Spa.

67. Defendant SAS, Defendant Umstead Hotel and Spa, and Defendant ĀN Asian Cuisine shared at least one company official, Donald R. Parker, who acted as Executive Vice President and Chief Financial Officer for Defendant SAS, Manager for Defendant Umstead Hotel and Spa, and Manager for Defendant ĀN Asian Cuisine.

68.     Defendant SAS and Defendant Umstead Hotel and Spa shared at least one additional company official, John G. Boswell, who acted as Executive Vice President, Chief Legal Officer, and Corporate Secretary for Defendant SAS, and Manager for Defendant Umstead Hotel and Spa.

69.     Upon information and belief, Defendant SAS hired employees to work in managerial positions at Defendant ÃN Asian Cuisine, including, but not limited to, former General Manager James Yang, who wore a pin with the name and insignia of Defendant SAS while working at Defendant ÃN Asian Cuisine.

70.     Upon information and belief, Defendant Ann Goodnight founded Defendant ÃN Asian Cuisine.

71.     Upon information and belief, Defendant Ann Goodnight had a "house account" at Defendant ÃN Asian Cuisine.

72.     Upon information and belief, Defendant Ann Goodnight often visited Defendant ÃN Asian Cuisine to recommend changes to the restaurant's layout and appearance, including, but not limited to, artwork to display in the dining rooms.

73.     The work performed by Named, Opt-In, and Putative Plaintiffs was integral to all Defendants.

74.     All Defendants directly or indirectly exerted control over Named, Opt-In, and Putative Plaintiffs.

75.     Upon information and belief, at all times material to this complaint, Defendants' uniform approach throughout their operations in securing, assigning, monitoring, and compensating Named, Opt-In, and Putative Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

76.     Named Plaintiff brings the First and Second Counts of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

77.     Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who have worked for Defendants (either as separate or joint employers), at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b), who were non-exempt employees paid a direct hourly wage of less than the minimum wage, and who were required to participate in ÃN Asian Cuisine's illegal mandatory tip pool, including, but not limited to, servers, server assistants, runners, and bartenders

78.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named, Opt-In, and Putative Plaintiffs.

79.     Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

80.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the instant Complaint as Exhibit A, is a Consent to File Suit as Plaintiff executed by Named Plaintiff.

## NCWHA CLASS ACTION ALLEGATIONS

81.     Named Plaintiff brings the Third Count of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*.

82.     Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Named, Opt-In, and Putative Plaintiffs.

83.    <u>The Proposed Class</u>:  Individuals who have worked for Defendants (either as separate or joint employers), at any time within the two (2) year period prior to the filing of this lawsuit, who were non-exempt employees paid a direct hourly wage of less than the minimum wage, and who were required to participate in ÃN Asian Cuisine's illegal mandatory tip pool, including, but not limited to, servers, server assistants, runners, and bartenders.

84.    <u>Numerosity</u>:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Named Plaintiff at this time, upon information and belief, the class comprises at least fifty (50) individuals.

85.    <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all Named, Opt-In, and Putative Plaintiffs have been harmed by Defendants' misappropriation of Named, Opt-In, and Putative Plaintiffs' tips.  The common questions of law and fact include, but are not limited to, the following:

a.   Whether Defendants failed to pay Named, Opt-In, and Putative Plaintiffs all of their earned and accrued wages, including, but not limited to, any straight-time or overtime wages, on their regular pay date, pursuant to N.C. Gen. Stat. § 95.25.6;

b.   Whether Defendants compensated Named, Opt-In, and Putative Plaintiffs for all of their hours worked;

c.   Whether Named, Opt-In, and Putative Plaintiffs were required to contribute a portion of their wages/tips to Defendants' illegal tip pool; and

d.   Whether Defendants lawfully deducted from Named, Opt-In, and Putative

Plaintiffs' wages, in accordance with N.C. Gen. Stat. § 95-25.8 and 13 N.C. Admin. Code 12 § .0305(g).

86.     <u>Typicality</u>: The claims of Named Plaintiff are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay employees all of their earned and accrued wages pursuant to N.C. Gen. Stat. § 95-25.6. Defendants' compensation policies and practices affected all putative class members similarly. Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

87.     <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

88.     <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class

members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

89. <u>Public Policy Considerations</u>: Defendants violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 203(m), 206**
**(Violation of Tip Credit and Failure to Pay Proper Minimum Wage)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

90. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

91. Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

92.     The FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, provides an exception to the aforementioned minimum wage rate of $7.25 per hour, allowing certain employers to take a "tip credit," and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit claimed for each employee of $5.12 per hour.

93.     In order to lawfully utilize the tip credit allowance, the FLSA, 29 U.S.C. § 203(m), requires in part that "all tips received by [each] employee [be] retained by the employee," except in the instance of an operation of a valid tip pool.

94.     A tip pool is only valid when it is comprised solely of employees who "customarily and regularly receive tips."

95.     When an employer, its owners, or its managers or supervisors share in a tip pool, the tip pool is invalidated.

96.     When employees who do not "customarily and regularly receive tips" share in a tip pool, the tip pool is invalidated.

97.     Here, Defendants included in their tip pool sushi chefs, sushi chef helpers, a supervisory/managerial employee, and/or a purely back-of-the-house employee, all of whom did not "customarily and regularly receive tips," therefore invalidating Defendants' mandatory tip pool.

98.     When a tip pool is invalidated, the employer can no longer enjoy the benefits of the tip credit provision under 29 U.S.C. § 203(m).

99.     Without the benefits of the tip credit provision, Defendants must pay Named, Opt-In, and Putative Plaintiffs an hourly rate the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips received by Named, Opt-In, and Putative Plaintiffs.

100.    Defendants willfully failed to pay Named, Opt-In, and Putative Plaintiffs the

statutory minimum wage rate, since they previously internally investigated a similar practice, and they have explicitly awarded an improper participant with a "Back-of-the-House Employee of the Quarter Award," among other acts or omissions.

101.    Defendants also acted willfully since they were subject to a similar lawsuit, alleging, in part, failure to pay straight-time wages related to mandatory tip misappropriations.

102.    The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

103.    Similarly, for the reasons stated above, Defendants cannot affirmatively defend their failure to pay the appropriate minimum wage rate as having been done in good faith, entitling Named, Opt-In, and Putative Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b).

104.    As such, Named, Opt-In, and Putative Plaintiffs seek to recover from Defendants the following damages:

a.  Minimum wages due;

b.  Liquidated damages in an equal amount;

c.  Reasonable attorneys' fees and costs; and

d.  All other legal and equitable relief as the Court deems just and proper.

**<u>COUNT TWO</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 207**
**(Failure to Pay Proper Overtime Wage)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

105.    Named Plaintiff incorporates by reference all preceding paragraphs as if the same

were repeated here verbatim.

106.    Pursuant to the FLSA, 29 U.S.C. § 207, an employer must pay non-exempt employees at one and one-half (1.5) their regular hourly rate for all hours worked over forty (40) in a single workweek.

107.    Named, Opt-In, and Putative Plaintiffs regularly worked greater than forty (40) hours per week.

108.    Without the benefit of the tip credit provision, for the reasons stated above, Defendants must pay Named, Opt-In, and Putative Plaintiffs for all overtime hours worked at a rate of one and one-half (1.5) their appropriate regular hourly wage of $7.25 per hour, equal to $10.88 per hour for all hours worked over forty (40) each week.

109.    Defendants willfully failed to pay Named, Opt-In, and Putative Plaintiffs the proper amount for all hours worked over forty (40) in a single workweek for the reasons stated above, including, but not limited to, their previous internal investigation.

110.    Defendants also acted willfully since they were subject to a similar lawsuit, alleging, in part, failure to pay appropriate overtime wages related to mandatory tip misappropriations.

111.    The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid overtime wages for up to three (3) years, rather than two (2) years.

112.    Similarly, for the reasons stated above, Defendants cannot affirmatively defend their failure to pay appropriate overtime wages as having been done in good faith, entitling Named, Opt-In, and Putative Plaintiffs to liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b).

113.    As such, Named, Opt-In, and Putative Plaintiffs seek to recover from Defendants the following damages:

    a.    Overtime wages due;

    b.    Liquidated damages in an equal amount;

    c.    Reasonable attorneys' fees and costs; and

    d.    All other legal and equitable relief as the Court deems just and proper.

<u>**COUNT THREE**</u>
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. §§ 95-25.6, 95-25.8**
**(Invalid or Unauthorized Deductions from Wages)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

114.    Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

115.    At all relevant times, Defendants have employed, and/or continue to employ, Named, Opt-In, and Putative Plaintiffs within the meaning of the NCWHA.

116.    Defendants employed Named, Opt-In, and Putative Plaintiffs within the State of North Carolina.

117.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, and the accompanying regulation, 13 N.C. Admin. Code 12 § .0305(g), "If an employer withholds or diverts wages for purposes not permitted by law, the employer shall be in violation of G.S. 95-25.6 . . . even if the employee authorizes the withholding in writing pursuant to G.S. 95-25.8(a), because that authorization is invalid."

118.    Funds received directly by Named, Opt-In, and Putative Plaintiffs as tips constituted "wages" because the tip credit was taken, and Defendants treated them as wages, consistent with explicit Fourth Circuit authority.

119. Regardless of whether Defendants may have received authorization otherwise in compliance with N.C. Gen. Stat. § 95-25.8(a), Defendants withheld Named, Opt-In, and Putative Plaintiffs' wages "for purposes not permitted by law," as provided above, and are therefore liable for these unlawful withholdings.

120. Defendants unlawfully withheld and diverted funds from the compensation earned by Named, Opt-In, and Putative Plaintiffs for an improper purpose, to offset Defendants' business expenses, including, but not limited to, the cost of employing other workers, and through an invalid and illegal tip pooling arrangement, in direct violation of the NCWHA.

121. Additionally, pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8(a)(3), an employer may only withhold or divert any portion of an employee's wages, "when the amount of the proposed deduction is not known and agreed upon in advance," after meeting several requirements, including, but not limited to: (1) receiving written authorization from each employee; (2) providing the reason for each deduction; (3) providing advance written notice of the actual amount to be deducted; and (4) providing written notice to employees of their right to withdraw authorization.

122. Beyond withholding Named, Opt-In, and Putative Plaintiffs' wages "for purposes not permitted by law," Defendants violated N.C. Gen. Stat. § 95-25.8(a)(3) by not receiving sufficient authorization from Named, Opt-In, and Putative Plaintiffs, including, but not limited to, failing to provide advance written notice of the actual amount to be deducted, or failure to provide written notice of employees' right to withdraw authorization.

123. As a result of Defendants' unlawful policies and practices, Named, Opt-In, and Putative Plaintiffs have been deprived of compensation due and owing.

124. Consistent with the above, Defendants failed to pay Named, Opt-In, and Putative

Plaintiffs all owed promised and earned wages, in violation of N.C. Gen. Stat. § 95-25.6.

125.     For the reasons stated above, including, but not limited to, their previous internal investigation and similar lawsuit alleging tip misappropriations, Defendants cannot affirmatively defend their NCWHA violations as having been done in good faith, entitling Named, Opt-In, and Putative Plaintiffs to liquidated damages in an amount equal to the amount of unpaid overtime wages under N.C. Gen. Stat. § 95-25.22(a1).

126.     As such, Named, Opt-In, and Putative Plaintiffs seek to recover from Defendants the following damages:

    a.  Misappropriated and/or unlawfully deducted wages;

    b.  Liquidated damages in an equal amount;

    c.  Reasonable attorneys' fees and costs;

    d.  Prejudgment interest; and

    e.  All other legal and equitable relief as the Court deems just and proper.

**COUNT FOUR**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 215**
**(Unlawful Retaliation)**
**(On Behalf of Named Plaintiff and Opt-In Plaintiff Wai Man Tom)**

127.     Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

128.     Pursuant to 29 U.S.C. § 215, an employer is prohibited from retaliating, or in any manner discriminating, against an employee for complaining, instituting a proceeding, or otherwise exercising their rights under the FLSA.

129.     After Named Plaintiff and Opt-In Plaintiff Wai Man Tom ("Opt-In Plaintiff

Tom") brought the aforementioned minimum wage, overtime, and/or tip pool issues to Defendants' attention, Defendants drastically reduced the amount of hours that Named Plaintiff and Opt-In Plaintiff Tom were permitted to work. This occurred despite the fact that Named Plaintiff and Opt-In Plaintiff Tom were among Defendants' top grossing servers, with the highest sales averages per guest, and despite the fact that Named Plaintiff and Opt-In Plaintiff Tom did not change their workplace efforts or behavior in any regard.

130. Named Plaintiff and Opt-In Plaintiff Tom, prior to this reduction, were able to work virtually any hours they chose to work.

131. Defendants also, following concerns voiced from Named Plaintiff and Opt-In Plaintiff Tom, adjusted the floor plans that they were able to work, drastically reducing the number of customers they served and diminishing the number of tips they were able to receive, including tips from lunch, which were not pooled.

132. Additionally, Defendants have informed other prospective employers, including nearby restaurants, of Named Plaintiff and Opt-In Plaintiff Toms' complaints related to this lawsuit, inhibiting their ability to find work elsewhere, and resulting in prospective employers expressly viewing them as liabilities and risks.

133. Upon information and belief, Named Plaintiff and Opt-In Plaintiff Toms' hours were reduced, floor plans adjusted, and prospective employers warned of their complaints, as part of a concerted effort by Defendants to retaliate against them for their complaints related to this lawsuit.

134. As such, Named Plaintiff and Opt-In Plaintiff Tom seek to recover from Defendants their full economic, noneconomic, and punitive damages, as well as equitable relief and all other relief deemed appropriate, for their individual claims of retaliation under 29 U.S.C.

§ 215.

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1.     Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2.     Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class;

3.     Award Named Plaintiff and all those similarly situated actual damages for all unpaid and misappropriated wages found due to Named Plaintiff and those similarly situated, and liquidated damages equal in amount, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4.     Award Named Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

5.     Award Named Plaintiff and all those similarly situated attorneys' fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6.     Award Plaintiff and all those similarly situated further legal equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this, February 21, 2017.

/s/ Gilda A. Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Michael B. Cohen (NCSB No. 50629)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com

*Attorneys for Plaintiffs*