IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-98-FL

| | |
|---|---|
| BRANDON KELLY on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | ORDER |
| HOSPITALITY VENTURES LLC doing business as Umstead Hotel and Spa, SAS INSTITUTE INC., NC CULINARY VENTURES LLC doing business as An Asian Cuisine, and ANN B. GOODNIGHT, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

This matter is before the court on plaintiff's motion to amend complaint (DE 37).[1] The motion has been briefed fully, and the issues raised are ripe for ruling. For the following reasons, plaintiff's motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this action on February 21, 2017, asserting claims against defendants under the Fair Labor Standards Act (FLSA) and the North Carolina Wage and Hour Act (NCWHA), based upon their alleged failure to pay plaintiff adequate wages and overtime compensation, as well as alleged acts of retaliation, during plaintiff's work as a server at a restaurant in Cary, North

---

[1] Also pending is a motion to dismiss by defendant Ann B. Goodnight ("Goodnight") (DE 21), which the court held in abeyance pending decision on the instant motion to amend. In light of the court's decision on the instant motion, as set forth herein, defendant Goodnight's motion to dismiss is denied as moot.

Carolina, named An Asian Cuisine ("An" or the "restaurant"). Plaintiff seeks damages for unpaid minimum wages; overtime compensation; liquidated and statutory damages; further damages and other relief for retaliation; as well as fees, costs, and interest. On February 22, 2017, plaintiff filed a consent to join suit by another former server at the restaurant, Wai Man Tom ("Tom"), as a party plaintiff in collective action under the FLSA. Defendants Hospitality Ventures LLC doing business as Umstead Hotel and Spa ("Umstead"), SAS Institute Inc. ("SAS"), and NC Culinary Ventures LLC doing business as An (collectively, the "entity defendants"), filed an answer on March 31, 2017.

Defendant Goodnight filed a motion to dismiss the same date, asserting that plaintiff fails to state a claim against her, on the basis that plaintiff does not allege that defendant Goodnight was an employer or plaintiff under the FLSA or NCWHA. Plaintiff responded in opposition to the motion on April 20, 2017.

On April 26, 2017, plaintiff filed an emergency motion for hearing, referencing "alarming circumstances brought to their attention by counsel for Defendants on the morning of April 26, 2017." (DE 25). The court set hearing for the afternoon of April 27, 2017. That day, defendants filed a notice describing certain emails that counsel for defendants received "from an unknown person about this action," purportedly sent from "Kathy Hanrahan," ("Hanrahan"), an editor for WRAL Television in Raleigh, North Carolina. (DE 27 at 1-2). Defendants noted that Hanrahan "denies sending the emails and she has contacted the Federal Bureau of Investigation ("FBI") about the misuse of her identity," and defendants asserted that the emails raise issue as to whether probable cause exists that a federal criminal offense has been committed. (Id. at 2).

2

The court held telephonic hearing on April 27, 2017, wherein plaintiff's counsel expressed concern that defendants' counsel may have "committed an ethical violation . . . of the North Carolina Rules of Professional Conduct by communicating with a party that they know was represented by counsel." (DE 29 at 6). Plaintiff's counsel also expressed concern, inter alia, that defendants may have retaliated against plaintiff, in violation of § 15(a)(3) of the FLSA, by causing Hanrahan to report to FBI. (DE 29 at 10). After hearing the perspective of plaintiff and defendants' counsel, the court suggested that "plaintiff['s] counsel seek the guidance of the North Carolina State Bar," and the court invited the parties to submit a consent motion regarding scheduling. (Id. at 22)

On May 17, 2017, plaintiff filed the instant motion to amend complaint, proposing to make three main categories of changes discussed further herein:

1. Amendments to which defendants do not object, including substitution of proposed plaintiff Tom as named plaintiff and designation of plaintiff as an opt-in plaintiff under the FLSA.
2. Additional allegations regarding defendant Goodnight.
3. Additional allegation that defendants "contacted law enforcement, and/or threatened to pursue criminal charges, against Opt-In Plaintiff Kelly, in an effort to pressure him to voluntarily dismiss this lawsuit, and/or have his counsel withdraw from the matter, in order to retaliate against him for this lawsuit." (DE 38-2).

On May 19, 2017, by consent order, the court held in abeyance ruling on defendant Goodnight's motion to dismiss until the court entered an order on the motion to amend. The court also extended the deadline for filing a discovery plan until 15 days from the date of the court's order on the motion to amend.

3

On June 6, 2017, plaintiff filed a motion for disqualification of defendants' counsel (the "motion to disqualify") "for numerous violations of the North Carolina Rules of Professional Conduct." (DE 41). In support of the motion to disqualify, plaintiff noted that the violations had been subject of grievances filed with the North Carolina State Bar (see DE 42 at 8; DE 42-5), and that such violations included alleged "retaliatory threats" to pursue criminal charges, pressure to cause plaintiff to voluntarily dismiss the lawsuit, and to have counsel withdraw from the matter. (DE 42 at 19-22).[2] Defendant's responded in opposition to the motion to disqualify, and plaintiff replied.

On August 7, 2017, defendants filed a supplemental memorandum in opposition to the motion to disqualify, attaching letters from the North Carolina State Bar dismissing the grievances filed against defendants' counsel, in which the North Carolina State Bar stated that "there was not probable to believe that you violated the Rules of Professional Conduct." (DE 56; DE 56-1; DE 56-2; DE 56-3; DE 56-4; DE 56-5). On August 9, 2017, the court denied by margin order the motion to disqualify.

## STATEMENT OF ALLEGED FACTS

The facts alleged in the complaint and proposed amended complaint as pertinent to the instant motion may be summarized as follows. The restaurant operated in Cary, North Carolina, between 2004 and January, 2017. During its operation, the restaurant offered customers "a fine dining experience with authentic Asian cuisine." (DE 38-1 ¶ 16). Plaintiff worked at the restaurant as an hourly server from approximately 2010 to January 2017, and proposed plaintiff Tom worked

---

[2] Page numbers for docket entry (DE) numbers in citations to the record in this order designate the page number specified by the court's electronic case filing (ECF) system, and not the page number provided on the face of the underlying document.

4

at the restaurant as an hourly server from approximately May 2012 to January 2017, "waiting on customers and providing diners with upscale service." (Id. ¶¶ 11-12; see DE 1 ¶¶ 11-12).

The restaurant utilized a mandatory tip pool to reduce its labor costs and to supplement the compensation that it paid to non-customarily tipped or supervisory personnel. The restaurant required plaintiff Tom to remit a set percentage of his tips/wages into its mandatory tip pool. The restaurant included, in its mandatory tip pool, personnel who were not customarily and regularly tipped, such as sushi chefs or kitchen managers. The restaurant used the tips of plaintiff, proposed plaintiff Tom, and other similarly situated personnel, to reduce its business and employment costs by having such servers supplement the compensation of other non-customarily tipped or supervisory personnel. Upon closure of the restaurant, defendants did not compensate proposed plaintiff Tom or similarly situated personnel with paid time off, failed to allocate the appropriate amount of paid time off, and did not continue insurance or other benefits for which deductions had been made.

With respect to the relationship between the entity defendants, plaintiff alleges certain common business practices and joint employment practices in operation of the restaurant. Defendant An, which operated the restaurant, is "an extension of" defendant Umstead, which is a hotel and spa that has been operating in Cary, North Carolina, since 2004. (Id. ¶ 64). At all times relevant to this action, staff of the restaurant and defendant Umstead held regular meetings, comprised of general managers from both parties, executive chefs from both parties, and the finance director of defendant Umstead, who concurrently managed the finances of the restaurant. The restaurant and Umstead shared personnel, including, but not limited to, the culinary director of the restaurant, who also acts as executive chef at a separate restaurant located on defendant Umstead premises. Staff at defendant Umstead handled administrative tasks for the restaurant. When the

restaurant was short-handed on staff, employees from defendant Umstead filled managerial positions, an occurrence that took place at certain times for multiple-month periods.

When plaintiff, proposed plaintiff Tom, and other similarly situated personnel, had issues related to their employment or their salary, they were instructed by managers at the restaurant to speak with the human resources department or finance department of defendant Umstead. When complaints were made by customers against plaintiff, proposed plaintiff Tom, and other similarly situated employees, such complaints were handled by staff of defendant Umstead. The executive chef of the restaurant on the premises of defendant Umstead attended these meetings, along with personnel of both the restaurant and defendant Umstead. A large portion of the tools and equipment essential for plaintiff, proposed plaintiff Tom, and other similarly situated personnel to perform their jobs was supplied to the restaurant by defendant Umstead, and then distributed in the restaurant as needed.

Defendants SAS, Umstead, and An shared at least one company official, Donald R. Parker ("Parker"), who acted as executive vice president and chief financial officer for defendant SAS, which is a multinational developer of analytics software based in Cary, North Carolina. Parker acted as manager for defendant Umstead and manager for the restaurant. Parker met with personnel in the restaurant on or about January 28, 2017, to announce the restaurant's closure. Defendant SAS and defendant Umstead shared at least one additional company official, John G. Boswell, who acted as executive vice president, chief legal officer, and corporate secretary for defendant SAS, and manager for defendant Umstead. Defendant SAS hired personnel to work in managerial positions at the restaurant, including, but not limited to, former general manager James Yang, who wore a pin with the name and insignia of defendant SAS while working at the restaurant.

6

With respect to defendant Goodnight, plaintiff alleges that she "founded" defendant An. (Id. ¶ 77). Defendant Goodnight had a "house account" at the restaurant and sat at a "VIP table" when she ate at the restaurant. (Id. ¶¶ 78-79). She often visited the restaurant "to recommend changes to the restaurant's layout and appearance, including, but not limited to, artwork to display in the dining rooms." (Id. ¶ 80). In 2016, she "instructed [the restaurant] to update its menu, which [the restaurant] subsequently updated." (Id. ¶ 81). In 2016, she visited the restaurant approximately once per week, during which she often, if not seated at a "VIP table," "ate with the head chef and managers at [the restaurant] and executives from [defendant SAS] or [defendant Umstead] in a private board room." (Id. ¶ 82).

**COURT'S DISCUSSION**

A.  Standard of Review

Where, as here, a party seeks leave to amend after a responsive pleading or Rule 12(b) motion has been filed, the party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Id.

With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v.

Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

1.  Amendments to which defendants do not object

As noted above, plaintiff proposes certain additions and allegations in proposed amended complaint to which defendants do not object, including substitution of proposed plaintiff Tom as named plaintiff and designation of plaintiff as an opt-in plaintiff under the FLSA, as well as allegations concerning benefits. (See DE 38-2 at pp. 1, 22, 25, 27; ¶¶ 2, 3, 11, 30, 33-35, 58, 60-62, 90, 95, 133-35, 139, 142-146, 148). For good cause shown, plaintiff's motion to amend complaint is granted in part to allow such additions and allegations.

2.  Defendant Goodnight

Plaintiff proposes to add certain allegations regarding defendant Goodnight. For the reasons set forth below, these new allegations considered together with the allegations of the original

8

complaint fail to state a claim against defendant Goodnight because plaintiff has not alleged facts permitting an inference that defendant Goodnight was an employer of plaintiff or proposed plaintiff Tom. Therefore, plaintiff's motion to amend must be denied as futile in this part, and claims against defendant Goodnight must be dismissed without prejudice.

The FLSA provides a cause of action by an "employee" against "[a]ny employer" who violates sections 206 or 207 of the FLSA. 28 U.S.C. § 216(b). The FLSA "provides little guidance as to what constitutes an employer-employee relationship or 'employment' sufficient to trigger its compensation provisions." Benshoff v. City of Virginia Beach, 180 F.3d 136, 140 (4th Cir. 1999). An "employee" is as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and an "employer" is as "any person acting directly or indirectly in the interest of an employer in relation to an employee," id. at § 203(d). To "employ" means "to suffer or permit to work." Id. at § 203(g).

"The scope of these definitions, however, is not limitless." Benshoff, 180 F.3d at 140. because the Act does not define which activities constitute 'employment' sufficient to trigger its provisions, 'employment' is to be determined by its commonly understood meaning, which is 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" Id. (quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)). In making this inquiry, the court must "remain mindful that the employer-employee relationship does not lend itself to rigid per se definitions, but depends upon the circumstances of the whole activity." Id. at 141 (quotations omitted).

In determining whether an individual defendant is an employer of plaintiff under the FLSA, a critical factor is the extent of defendant's "control of the terms and conditions of the work of the

9

employees." Id. (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)). For example, in Benshoff, the Fourth Circuit held that a defendant was not an employer under the FLSA, even though it imposed certain "certification requirements" and "coordinat[ed] services," where there was otherwise "a significant lack of control" over terms and conditions of the work of rescue squad personnel. Id. at 143-145. By contrast, in Brock v. Hamad, 867 F.2d 804 (4th Cir. 1989), the court held that a defendant was an employer because "he hired and directed the employees who worked for the enterprise." Id. at 809 n.6. Likewise, in Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961), the court applied an "economic reality" test to hold defendant managing entity liable as employer where it "fixes the piece rates at which [plaintiffs] work," and "can expel them for substandard work or for failure to obey the regulations."

Although the Fourth Circuit has not expressly listed all factors that might bear on whether an individual defendant is an "employer" under the FLSA, district courts within the circuit, including this one, have enumerated certain additional factors based upon a survey of federal case law. These include whether the individual defendant "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 721 (E.D.N.C. 2009). Further factors may include whether the individual has "extensive managerial responsibilities," or "the person's job description," or "his or her financial interest in the enterprise." Lima v. Stanley, No. 5:14-CV-896-FL, 2015 WL 4769546, at *6 (E.D.N.C. Aug. 12, 2015) (quotations omitted); see Sullivan v. Kight's Med. Corp., No. 5:12-CV-592-FL, 2013 WL 4524897, at *5 (E.D.N.C. Aug. 27, 2013). Behind each such factor, the key is whether "the individual [defendant] has sufficient operational control over the workers

10

in question and the allegedly violative actions to be held liable for unpaid wages or other damages." Garcia, 644 F. Supp. 2d at 720 (quotations omitted).[3]

In this case, plaintiff has not alleged facts permitting a plausible inference under this standard that defendant Goodnight was an employer of plaintiff or proposed plaintiff Tom. Plaintiff does not allege facts permitting an inference that defendant Goodnight had any operational control over servers at the restaurant such as plaintiff or proposed plaintiff Tom, much less operational control over the alleged violative actions in mandating contributions to a tip pool or not providing benefits upon closure of the restaurant. Plaintiff does not allege that defendant Goodnight had the power to hire and fire servers at the restaurant; supervised and controlled employee work schedules or conditions of employment; determined the rate and method of payment; or maintained employment records. Plaintiff does not allege that defendant Goodnight had extensive managerial responsibilities, much less any managerial duties with respect to wages, pay, and work conditions of servers in the restaurant. In sum, plaintiff has alleged insufficient "control of the terms and conditions of the work of the employees" by defendant Goodnight to permit an inference that she was the employer of plaintiff or proposed plaintiff Tom. Benshoff, 180 F.3d at 140 (quoting Falk, 414 U.S. at 195). Accordingly, claims against defendant Goodnight must be dismissed without prejudice.

Plaintiff argues, nonetheless, that allegations regarding defendant Goodnight's title as "founder" of defendant An, implying some financial stake in the restaurant, and her contacts with

---

[3] Because the definition of employer in the NCWHA is identical to that used in the FLSA, see N.C. Gen.Stat. § 95-25.2(5), the court's analysis of whether defendant Goodnight is an employer under for purposes of plaintiff's NCWHA claim is the same, for purposes of the instant motion, as that expressed in the text above under the FLSA. See Garcia, 644 F. Supp. 2d at 720.

the restaurant, are sufficient to state a claim against her as an employer. They are not. Given the lack of allegations of any operational or managerial control of staff at the restaurant, with respect to terms or conditions of employment, defendant Goodnight's title as "founder" is insufficient to permit an inference of an employer-employee relationship. Further, plaintiff's allegations regarding defendant Goodnight's contacts with the restaurant undermine rather than support his assertion that defendant Goodnight was acting as his employer.

For example, plaintiff describes defendant Goodnight's contacts such as eating regularly at the restaurant at a VIP table, and making suggestions as to decoration or menu items in the restaurant. While such alleged actions, combined with her status as founder, may imply that defendant Goodnight had influence over the customer experience at the restaurant, they do not permit an inference plausibly that she directed or controlled staff operations, particularly hour and pay procedures for server staff underlying the claims in this case. Indeed, the limited nature of the conduct alleged suggests that defendant Goodnight only had involvement in decoration and menu aspects of the restaurant.

Plaintiff also suggests that an inference of control can be inferred by the fact that defendant Goodnight ate regularly with the head chef and managers at the restaurant, along with executives of SAS and Umstead, in a private board room. It is too speculative to infer from the mere fact of a meeting at a VIP table, however, that defendant Goodnight had the kind of operational control required to be an employer under FLSA. While it is conceivable that defendant Goodnight discussed operational issues with server staff, tips, or wages, while dining at the VIP table, plaintiff has not alleged facts sufficient to nudge the claim against defendant Goodnight from conceivable to plausible. Twombly, 550 U.S. at 570.

Plaintiff further argues that dismissal without allowing further discovery into defendant Goodnight's contacts with the restaurant is premature. Plaintiff cites, for example, the case Miller v. Colorcraft Printing Co., No. 3:03 CV 51-T, 2003 WL 22717592, at *3 (W.D.N.C. Oct. 16, 2003), where the court denied a motion to dismiss an individual defendant after examining factors bearing on employer status. There, the court reasoned:

> Defendant Wilkinson's job title [chief operating officer] alone suggests that he might have had sufficient operational control to warrant the imposition of liability against him. Defendant Wilkinson ultimately may show that he did not have sufficient control over the pertinent decisions to subject him to liability, but at this stage in the proceedings, the undersigned simply cannot say that 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'

Id. at *4 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Plaintiff suggests the same approach is warranted here. Miller, however, is distinguishable because defendant Goodnight does not have the job title of chief operating officer. In addition, the holding in Miller is inapposite because it was decided under a superseded standard for pleading. Indeed, the court in Miller based its decision on whether "relief could be granted under any set of facts that could be proved consistent with the allegations," id., a standard superseded by Twombly. See 550 U.S. at 562.

Finally, plaintiff argues that dismissal of defendant Goodnight is not warranted because plaintiff has asserted in the complaint employer conduct by "defendants" collectively, which necessarily includes defendant Goodnight. For example, plaintiff asserts in the complaint and proposed amended complaint that "Defendants controlled the work schedule and rate of pay for Named, Opt-In, and Putative Plaintiffs," and "Defendants used Named, Opt-In, and Putative Plaintiffs' tips as wages in order to satisfy the remainder of their statutory minimum wage obligations." (DE 38-1 ¶ 32, 37) (emphasis added). Where plaintiff has pleaded "enough facts to

13

state a claim to relief that is plausible on its face" against the entity defendants, but has not done so against defendant Goodnight, conclusory collective naming of defendants in the aggregate is not sufficient to save the claim from dismissal against defendant Goodnight. See Twombly, 550 U.S. at 570; Nemet Chevrolet, 591 F.3d at 255.

In sum, plaintiff fails to state a claim against defendant Goodnight because plaintiff has not alleged facts permitting an inference that defendant Goodnight was an employer of plaintiff or proposed plaintiff Tom. Therefore, plaintiff's motion to amend must be denied as futile in this part, and all claims against defendant Goodnight must be dismissed without prejudice.

3. Retaliation

As noted above, plaintiff seeks to amend the complaint to add an allegation to his retaliation claim that defendants "contacted law enforcement, and/or threatened to pursue criminal charges, against Opt-In Plaintiff Kelly, in an effort to pressure him to voluntarily dismiss this lawsuit, and/or have his counsel withdraw from the matter, in order to retaliate against him for this lawsuit." (DE 38-2). In light of the court's denial of plaintiff's motion for disqualification of counsel, which motion was based on conduct including that proposed as a new allegation in the amended complaint, (see DE 42 at 8, 19-22; DE 42-5), the court finds that amendment at this juncture is not in good faith. In so holding, the court does not opine whether the amendment sought was made in bad faith at the time it was made, only that the amendment is not in good faith at this time, given the outcome of the motion for disqualification and the grievances underlying such motion.

Therefore, in the court's discretion, plaintiff's motion to amend is denied in this part.

14

## CONCLUSION

Based on the foregoing, plaintiff's motion to amend complaint (DE 37) is GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiff shall file, within **7 days** of the date of this order an amended complaint containing only those amendments allowed by this order. In light of the court's ruling on the instant motion to amend, defendant's motion to dismiss defendant Goodnight (DE 21) is DENIED AS MOOT. The parties are DIRECTED to file within **15 days** of the date of this order a joint report and plan in accordance with the court's April 3, 2017, initial order.

SO ORDERED, this the 5th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge