IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CA No. 5:17-cv-00098-FL

WAI MAN TOM, on behalf of himself and )
all others similarly situated, )
)
*Plaintiff*, )
)
v. )                    March 23, 2018
)
HOSPITALITY VENTURES LLC, d/b/a )
UMSTEAD HOTEL AND SPA, NC )
CULINARY VENTURES LLC, d/b/a ÃN )
ASIAN CUISINE, SAS INSTITUTE INC., )
and ANN GOODNIGHT, )
)
*Defendants*. )

_____

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND CORRECTIVE MAILING TO ADDRESS DEFENDANTS' IMPROPER COMMUNICATION WITH PUTATIVE CLASS MEMBERS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

III.    ARGUMENT ...................................................................................................... 7

        A.      Defendants' Unilateral Communications With Putative Class
                Members Are Improper. ................................................................................ 7

IV.     CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Abdallah v. Coca Cola Co.*
   186 F.R.D. 672 (N.D. Ga. 1999) ................................................................. 12

*Adair v. EQT Prod. Co.*
   2011 WL 4501048 (W.D. Va. Sept. 28, 2011) ............................................... 8

*Barton v. The Pantry, Inc.*
   2006 WL 2568462 (M.D.N.C. Aug. 31, 2006) .............................................. 8

*Bower v. Bunker Hill Co.*
   689 F. Supp. 1032 (E.D. Wash. 1985) ......................................................... 12

*Brown v. Nucor Corp.*
   785 F.3dd 895 (4th Cir. 2015) ...................................................................... 9

*Dondore v. NGK Metals Corp.*
   152 F.Supp. 2d 662 (E.D. Pa. Apr. 9, 2001) .......................................... 8, 13

*Erhardt v. Prudential Group, Inc.*
   629 F.2d 843 (2d Cir. 1980) ........................................................................ 8

*Georgine v. Amchem Prods.*
   160 F.R.D. 478 (E.D. Pa. Mar. 1, 1995) ...................................................... 8

*Gulf Oil v. Bernard*
   452 U.S. 89 (1981) ................................................................................... 7, 8

*Haffer v. Temple Univ. of Com. Sys. of Higher Educ.*
   115 F.R.D. 506 (E.D. Pa. Mar. 3, 1987) ...................................................... 8

*Hoffman-LaRoche, Inc. v. Sperling*
   493 U.S. 165 (1989) .................................................................................... 7

*In re Cmty. Bank of N. Virginia*
   418 F.3d 277 (3d Cir. 2005) ....................................................................... 13

*In re Currency Conversion Fee Antitrust Litig.*
   361 F.Supp. 2d 237 (S.D.N.Y. 2005) ........................................................... 8

*In re School Asbestos Litigation*
   842 F.2d 671 (3d Cir. 1988) ........................................................................ 8

*Irvine v. Destination Wild Dunes Mgmt., Inc.*
132 F.Supp. 3d 705 (D.S.C. 2015) ............................................................................. 9, 12

*Kleiner v. First National Bank of Atlanta*
751 F.2d 1193 (11th Cir. 1985) ...................................................................................... 12

*Mevorah v. Wells Fargo Home Mortg., Inc.*
2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ............................................................. 13

*Paulino v. Dollar Gen. Corp.*
2013 WL 1773892 (N.D.W. Va. Apr. 25, 2013) ............................................................. 7

*Pollar v. Judson Steel Corp.*
1984 WL 161273 (N.D. Cal. Feb. 3, 1984) .................................................................... 13

*Quezada v. Schneider Logistics Transloading & Distribution*
2013 WL 1296761 (C.D. Cal. Mar. 25, 2013) ................................................... 10, 12, 14

*Randolph v. PowerComm Const., Inc.*
41 F. Supp. 3d 461 (D. Md. 2014) .................................................................................. 7

*Slavinski v. Columbia Ass'n, Inc.*
2011 WL 1310256 (D. Md. Mar. 30, 2011) ............................................................. 11, 12

*Tomkins v. Amedisys, Inc.*
2014 WL 129401 (D. Conn. Jan. 13, 2014) .................................................................. 14

*Zamboni v. Pepe W. 48th St. LLC*
2013 WL 978935 (S.D.N.Y. Mar. 12, 2013) ................................................................. 12

**Statutes**

29 U.S.C. § 216 ........................................................................................................... 1, 7

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 1, 7

iv

In light of recent revelations concerning Defendants' counsel's communications with and dissemination of affidavits to putative class members, which took place under misleading circumstances, is creating confusion for putative class members, may prevent putative class members from participating or recovering damages in this litigation, and has taken place while Plaintiff's Motion to Conditionally Certify the Matter as a Collective Action and for a Court-Authorized Notice to be Issued Under Section 216(b) of the Fair Labor Standards Act, and to Certify the Matter as a Class Action Under Fed. R. Civ. P. 23(a) and (b)(3), and to Appoint Class Counsel Under Fed. R. Civ. P. 23(g) ("Motion for Certification") is pending, *see* Dkt. 79, Plaintiff hereby moves the Court for an expedited consideration of this motion to immediately authorize Plaintiff to issue corrective notice, and for the entry of an order imposing additional corrective measures, as detailed below.

## I.    <u>INTRODUCTION</u>

On March 15, 2018, Plaintiff filed his Motion for Certification. *See* Dkt. 79. Pursuant to that Motion, Plaintiff is seeking conditional certification of this action as a representative collective action under the Fair Labor Standards Act ("FLSA"); approval of the proposed FLSA notice of this action and the consent form, which would allow Plaintiff to issue Court-approved notice to putative class members; and certification of this action as a class action under Rule 23(a) and (b)(3) for his North Carolina Wage and Hour Act ("NCWHA") claims, among other forms of relief. *See id.*

Plaintiff's counsel have recently learned that while Plaintiff's Motion for Certification is pending, Defendants' counsel have improperly interfered with the notice process. Specifically, Defendants' counsel have been meeting with putative class

1

members, including former servers, server assistants, runners, and/or bartenders, and unilaterally having them execute affidavits relating to their pay and wages due from Defendants. These affidavits interfere with the Court's authority to prevent confusion and unfairness concerning an FLSA collective action and Rule 23 class action, and may also prevent putative class members from participating or recovering damages in this litigation.[1] The meetings also took place under misleading and confusing circumstances.

Since the putative class members are not being fully advised as to the nature of the lawsuit and how signing such an affidavit may affect their rights, among many other pertinent details, as provided below, their execution of affidavits prepared by Defendants' counsel, and their communications with Defendants' counsel, unduly prejudice them. Further, since neither the Court nor Plaintiff's counsel were privy to the communications and representations between Defendants' counsel and putative class members, and since the communications took place under misleading circumstances, the affidavits constitute improper communications with putative class members, interfering with the Court's jurisdiction over this case, and its ability to supervise communications with class members, in an effort to ensure that all parties act *fairly* while the Court decides whether and how the action will move forward. For these reasons, and because the Court is vested with supervisory authority over Defendants' communications with putative class members,

---

[1] Importantly, Defendants' active solicitation of signed affidavits from putative class members, relating to what they all experienced and how they were all commonly treated, also stands as proof that these employees are similarly situated, and this should be considered further evidence to support Plaintiff's Motion for Certification.

2

Plaintiff respectfully asks this Court to enter the proposed Order.[2]

## II.   **BACKGROUND**

On March 19, 2018, Plaintiff's counsel learned that Defendants' counsel were

approaching putative class members about signing the affidavits at issue.[3]  A former tipped

---

[2] The proposed Order, filed with the instant Motion, requests that the Court (1) grant the instant Motion; (2) prohibit Defendants from further communications with putative class members, without permission from the Court; (3) invalidate all affidavits improperly obtained; (4) direct Defendants to provide Plaintiff's counsel with the names, telephone numbers, email addresses, and mailing addresses of all putative class members who Defendants communicated with regarding the affidavits discussed herein; (5) direct Defendants to provide Plaintiff's counsel with all materials sent to or received from putative class members; (6) direct that counsel for the parties submit to the Court an agreed-upon form of corrective notice; (7) direct that the notice briefly describe the lawsuit, and advise putative class members that their signed affidavits will have no legal effect, and will not impact their right to participate in this action; and (8) provide any other relief this Court deems necessary or appropriate.

[3] On March 19, 2018, the same day that they learned about Defendants' counsel's improper communications, Plaintiff's counsel contacted Defendants' counsel, asking about their availabilities for a phone call.  *See* Correspondence with Defendants' Counsel, attached hereto as Ex. A.  Counsel for the parties agreed to speak the following day, on March 20. During the telephonic conference, Plaintiff's counsel requested that Defendants' counsel cease and desist contacting putative class members without Court approval, and that Defendants counsel disclose how many putative class members they spoke to in total, and send executed affidavits for Plaintiff's counsel's review.  Plaintiff's counsel provided that, in disclosing all such details, the parties may be able to avoid seeking Court intervention on this issue.  Defendants' counsel requested that Plaintiff's counsel wait until 3:00 p.m. on March 21, 2018 for their response.  The following day, on March 21, Plaintiff's counsel emailed Defendants' counsel, requesting that the call take place on March 22, due to obligations in other matters.  *See id.*  Defendants' counsel responded on March 21, asserting that the Federal Rules of Civil Procedure do not prohibit their conduct in communicating with putative class members.  *See id.*  Plaintiff's counsel replied that same day, pointing out that if the communications are misleading or coercive, they violate the Rules.  *See id.* Plaintiff's counsel also requested that Defendants' counsel cease and desist further communications, send all executed affidavits to Plaintiff's counsel for review, and agree not to use such affidavits in the litigation.  *See id.*  Defendants' counsel responded on March 22, stating that the first request was moot because they were not planning any additional meetings with putative class members, but that they would not withhold use of such

server of Defendants, and a putative class member, Justin Dillon, contacted Plaintiffs' counsel to inform them that he received phone calls and text messages from Defendants' counsel, asking him to meet with them personally to discuss the case. *See* Declaration of Justin Dillon, attached hereto as Ex. B ¶¶ 3-4.[4]  Upon being contacted by Defendants' counsel, Mr. Dillon was not informed as to who they represented, or what the nature of the meeting was about. *See id.* ¶ 3.

Mr. Dillon and Defendants' counsel agreed to meet at a Starbucks location in Raleigh, North Carolina, on March 19, 2018. *See id.* ¶ 4.  When he arrived at Starbucks, Mr. Dillon approached two women who had computers and a portable printer set up at their table. *See id.* ¶ 5.  They did not introduce themselves, and did not inform Mr. Dillon as to who they represented; Mr. Dillon was not exactly sure who they were. *See id.*  Instead, one of the women, later identified to be Defendants' counsel Jordan Fishman, briefly explained, in vague terms, that a lawsuit was taking place. *See id.*  She still did not, at that point, tell Mr. Dillon whom she represented. *See id.*  Defendants' counsel never provided Mr. Dillon with the First Amended Complaint in this action (or any other Court filings); never asked Mr. Dillon whether he was represented by an attorney; never advised Mr. Dillon that he could consult with an attorney prior to signing any document; never informed

---

affidavits in the litigation. *See id.*  Defendants' counsel did not address whether they would turn over the executed affidavits. *See id.*

[4] Mr. Dillon had Plaintiff's counsel's contact information from a year prior, which he received from a former co-worker. *See id.* ¶ 8.  In addition to working as a server, Mr. Dillon also briefly trained with Defendants as an expeditor, though he did not receive tips directly from customers or from the tip pool while training in that position, even though the full-time expeditor, Nick Papas, did receive tips from the mandatory tip pool. *See id.* ¶ 2.

4

Mr. Dillon that he could decline to speak with her; and never told Mr. Dillon that he did not have to sign anything. *See id.* Mr. Dillon was also never provided with any information relating to his potential rights, or how such rights might be impacted by speaking with Defendants' counsel, or by providing Defendants' counsel with a signed affidavit. *See id.*

At the meeting, Mr. Dillon was asked a series of questions by Defendants' counsel, after which an affidavit was printed for his signature. *See id.* ¶ 6. It was not until approximately halfway through their meeting and based entirely on the one-sided nature of the questions that, Mr. Dillon asked who Defendants' counsel represents. *See id.* Defendants' counsel responded that they represent Ãn. *See id.* She did not disclose that they also represent two other Defendants in this action. *See id.*

When Mr. Dillon was asked to sign the affidavit, he was never explained what it was for, nor how it may affect his rights. *See id.* ¶ 7. Upon reviewing the affidavit, Mr. Dillon made several revisions, since he thought that the information was inaccurate and/or slanted for Defendants' benefit. *See id.* After striking a lot of one-sided language, Mr. Dillon executed the affidavit. *See id.* He was not offered a copy of the affidavit after signing it. *See id.*

After leaving the meeting with Defendants' counsel, Mr. Dillon began feeling misled about the purpose of the meeting, as well as who he was helping or hurting, who exactly he was talking to, or why his affidavit was needed. *See id.* ¶ 8. Mr. Dillon then contacted Plaintiffs' counsel, because he felt misled about the meeting with Defendants' counsel, and because he wanted to remain neutral in the litigation. *See id.* ¶ 9. He described the details of the meeting to Plaintiff's counsel, and stated that he believed Defendants'

counsel were meeting with several other putative class members, since he could not believe that they would travel from Atlanta to North Carolina, simply to meet with him. *See id.* ¶ 11.

Although Plaintiff's counsel have not been permitted by Defendants' counsel to review the affidavits at issue, *see supra* FN 3, Plaintiff's counsel have serious concerns about Defendants' conduct described herein. First, as provided above, Defendants' counsel's meetings with putative class members is taking place under misleading circumstances, since Defendants' counsel are not explaining to putative class members who they represent, what the purpose of the meetings is, whether they are represented by an attorney, that they could have an attorney represent them in the meetings, that they do not have to sign anything, how the affidavits would be used, how their rights may be affected, among many other significant details. Further, the affidavits that Defendants' counsel are having putative class members sign, and the direct communications between Defendants' counsel and putative class members without the knowledge or presence of the Court or Plaintiff's counsel, may effectively prevent or discourage putative class members from participating or recovering damages in this litigation. Their signed affidavits may impact their rights, and the unilateral communications between Defendants' counsel and putative class members may adversely affect their understanding of the underlying action. Such improper communications should be contrasted with the relief requested in Plaintiff's Motion for Certification, which, in part, requests Court approval as to the exact language of the notice and communications sent to putative class members. Further, the affidavits and communications at issue interfere with the Court's ability to prevent confusion and

unfairness in an FLSA collective and Rule 23 class action.

## III.   <u>ARGUMENT</u>

Courts have supervisory authority over a defendant's communications with putative class members. Fed. R. Civ. P. 23(d). Because of the potential for abuse, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981); *see also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting that a court's interest in overseeing communications with potential class members in § 216(b) actions is similar to that in Rule 23 class actions, and that "a trial court has substantial interest in communications that are mailed for single actions involving multiple parties.").

### A.  <u>Defendants' Unilateral Communications With Putative Class Members Are Improper.</u>

Courts in the Fourth Circuit, and sister circuits, have long recognized the impropriety of communications by defendants with putative class members, especially where their legal rights may be affected. *See, e.g., Randolph v. PowerComm Const., Inc.*, 41 F. Supp. 3d 461, 467 (D. Md. 2014) (invalidating forms signed by employees after their employer contacted them under potentially misleading or coercive circumstances, and stating that such communications between the defendant and employees "were abusive in that they threaten[ed] the proper functioning of the litigation."); *Paulino v. Dollar Gen. Corp.*, 2013 WL 1773892, at *8 (N.D.W. Va. Apr. 25, 2013) ("Abusive practices that have been considered sufficient to warrant a protective order include communications that . . . contain false, misleading or confusing statements; and communications that undermine

7

cooperation with or confidence in class counsel"); *Adair v. EQT Prod. Co.*, 2011 WL 4501048, at \*4 (W.D. Va. Sept. 28, 2011) ("The message of *Gulf Oil* is clear. Regulation of communication is appropriate where the purposes of Rule 23 are threatened or undermined."); *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp. 2d 237, 253 (S.D.N.Y. 2005) ("[W]hen a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization"); *cf. In re School Asbestos Litigation*, 842 F.2d 671, 680 (3d Cir. 1988) ("[M]isleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally."); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980); *Barton v. The Pantry, Inc.*, 2006 WL 2568462, at \*2 (M.D.N.C. Aug. 31, 2006) (denying defendant's request for limitation on communications with putative class members because it had not shown that plaintiffs' counsel had engaged in any improper or inaccurate communications); *Dondore v. NGK Metals Corp.*, 152 F.Supp. 2d 662, 666 (E.D. Pa. Apr. 9, 2001); *Georgine v. Amchem Prods.*, 160 F.R.D. 478, 489-502 (E.D. Pa. Mar. 1, 1995); *Haffer v. Temple Univ. of Com. Sys. of Higher Educ.*, 115 F.R.D. 506, 507-14 (E.D. Pa. Mar. 3, 1987).

Although Defendants will undoubtedly characterize their communications with putative class members as "investigative efforts," their unilateral meetings with putative class members, while Plaintiff's Motion for Certification is pending, and their dissemination of affidavits, took place under misleading circumstances, and were nothing more than an attempt to prejudice putative class members' ability to recover any damages,

prematurely defeat Plaintiff's Motion for Certification and forthcoming notice, and/or dissuade putative class members from joining the action, without the knowledge of the Court or Plaintiffs' counsel. One-sided, unsupervised, and unapproved communications with putative class members have been repeatedly recognized as problematic and requiring corrective action. *See, e.g.*, *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp. 3d 705 (D.S.C. 2015).

In *Irvine*, the District of South Carolina faced similar facts, wherein the plaintiff filed a motion for conditional class certification under the FLSA, and while the motion was pending, the defendants met with putative class members and executed sworn declarations. *Id.* at 706. The defendants defended the meetings as proper and entirely voluntary, while the plaintiff "characterized the one-on-one meetings between putative class members and defense counsel as 'ex parte communications' and [sought] an order prohibiting future meetings between putative class members and defense counsel without Plaintiff's counsel being present." *Id.* Even though the court stated that there is no outright prohibition on meeting with members of a putative class before a motion for certification is ruled upon, it provided that "a unilateral communications scheme . . . is rife with potential for coercion," and stated that courts should "proceed with eyes open to the imbalance of power and competing interests." *Id.* at 706-07 (citing *Brown v. Nucor Corp.*, 785 F.3dd 895, 913-14 (4th Cir. 2015)). The court held that the issue was moot, since certification had been granted before its ruling on this issue was made, but it directed that the parties not use the declarations in the litigation prospectively, without the explicit authorization of the court. *Id.* at 707.

9

Similarly, in *Quezada v. Schneider Logistics Transloading & Distribution*, 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013), the defendant-employer conducted interviews of putative class members before certification was granted. *Id.* at \*5. The putative class members were told that the attorneys interviewing them represented the defendant, and were also told that they were free to leave, were free to refuse to sign a declaration, and were free to make changes to their declaration prior to signing. *Id.* The court held that, despite these facts, the defendant's communications with putative class members were improper. *Id.* The court further provided that:

> Even if defendant provided its employees with some information about the lawsuit and with notice that the attorneys represented [the defendant], ***the communications were deceptive because the interviewing attorneys failed to notify the employees of the nature and purpose of the communications. Crucially, the employees were never told that the purpose of the interviews was to gather evidence to be used against the employees in a lawsuit.*** In fact, the employees were not even told that the document they were asked to sign at the close of the interview was a sworn declaration, nor were they apprised of the significance of signing a declaration under penalty of perjury.

*Id.* (emphasis added). The court went on the state that the interviews were "fundamentally misleading and deceptive ***because the employees were unaware that the interview was taking place in an adversarial context***, and that the employees' statements ***could be used*** to limit their right to relief." *Id.* (emphasis added). The court held that the declarations would be disregarded, that the defendant was barred from further communications with putative class members about the lawsuit without first obtaining the permission of the court, and that a corrective notice to putative class members was appropriate. *Id.* at \*6-7.

In direct contrast to this matter, there *are* appropriate methods for counsel representing a defendant to communicate with putative class members, before the court

rules on a motion for certification. *See, e.g., Slavinski v. Columbia Ass'n, Inc.*, 2011 WL 1310256 (D. Md. Mar. 30, 2011). For example, in *Slavinski*, the plaintiff argued that defense counsel's interviews with employees, with the primary purpose of having them sign affidavits, and without plaintiff's counsel present, constituted a prohibited "series of secret meetings." *See id.* at *2. The court began by laying out a two-part test to establish that a limitation on communications between a defendant is warranted, requiring that the plaintiff show: (1) that a particular form of communication has occurred or is threatened to occur; and (2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation. *See id.* at *3. The court then rejected the plaintiff's argument, pointing to the fact that "no employee who signed a declaration has stepped forward to object to the interview as misleading," *id.* at *4, and noting all of the appropriate actions that the defendant's counsel had taken:

> At the beginning of each meeting, [defendants' counsel] informed each employee that she was an attorney with the Association and that the purpose of the meeting was to discuss [the plaintiff's] lawsuit. [Defendants' counsel] provided each employee with a copy of [the plaintiff's] complaint and explained her allegations that the [defendant] had misclassified employees as exempt who were entitled to overtime compensation. [Defendants' counsel] also explained to the employees that their participation was completely voluntary and that 'they would not be offered anything of value in exchange for their cooperation, that they could consult a lawyer of their choosing before deciding whether to speak with [her] or to sign any written statement, that they could decline to speak with [her] or to provide and sign a written statement,' and that the law expressly prohibited the [defendant] from retaliating against them if they chose to join [the plaintiff's] lawsuit. At the conclusion of each meeting, [defendants' counsel] asked each employee whether he or she would be willing to sign a declaration only after explaining that it could negatively impact his or her right to join the lawsuit or to obtain monetary recovery from the [defendant].

*See id.* at *2 (citations omitted). In this matter, by contrast, Defendants' counsel literally

11

did not provided putative class members with *any* of the aforementioned details, and a putative class member, who has stated his intent to remain neutral (and has thus not opted into this action at this point), provided that he felt so misled after meeting with Defendants' counsel, that he decided to call Plaintiff's counsel to discuss the meeting. *See supra*. The differences between the defendants' counsel's conduct in *Slavinski*, and Defendants' counsel's conduct in this matter, is striking.

Like the courts in *Irvine* and *Quezada*, federal courts have consistently found that similar communications by defendants with putative class members, without leave of court or presence of plaintiff's counsel, is improper. *See, e.g., Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damages from misstatements could well be irreparable."); *Abdallah v. Coca Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) (holding that, even where the employer "has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case," the "danger of coercion is real and justifies the imposition of limitations on [the employer's] communications with potential class members."); *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985) (recognizing the "extreme potential for prejudice to class members' rights" if the defendant was permitted to discuss the suit with class members); *Zamboni v. Pepe W. 48th St. LLC*, 2013 WL 978935, at *3 (S.D.N.Y. Mar. 12, 2013) ("[A] communication may be coercive where the defendant . . . misleads them by failing to reveal how some proposed transaction

12

might affect their rights in the litigation"); *see generally In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 310 (3d Cir. 2005) ("Because the advantage of class action litigation comes at the cost of binding absent class members through the *res judicata* effect of litigation over which they lack control, the district courts must closely monitor the notice process and take steps to safeguard class members from 'unauthorized [and] misleading communications from the parties or their counsel.'") (citations omitted); *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *1 (N.D. Cal. Nov. 17, 2005); *Dondore*, 152 F. Supp. 2d at 666 (providing that "putative class members are properly characterized as parties to the action," and that "[i]f defense counsel or counsel otherwise adverse to their interests is allowed to interview and take statements from often unsophisticated putative class members without the approval of counsel who initiated the action, the benefits of class action litigation could be seriously undermined.") (quotations omitted); *Pollar v. Judson Steel Corp.*, 1984 WL 161273, at *1-2 (N.D. Cal. Feb. 3, 1984).

Similar to the defendants in the aforementioned cases, Defendants' counsel in this matter have engaged in one-sided communications with putative class members without the presence or consent of the Court or Plaintiff's counsel. Defendants' counsel failed to explain a *multitude* of *crucial* information to putative class members, as outlined above, including, but not limited to, who they represented, what the purpose of the meeting/affidavit would be, or how their rights may be affected. *See supra.* The affidavits at issue can also seriously prejudice putative class members' ability to recover in this action, and the communications that took place may dissuade putative class members from exercising their rights under the law. Just as in *Quezada*, the putative class members were

13

not advised that the purpose of the communications was to gather evidence to use against them in a lawsuit, or that their statements could be used to limit their right to relief, which significantly compromises the Court's authority over § 216(b) collective actions and Rule 23 class actions. *See Quezada*, 2013 WL 1296761, at *5. Defendants' failure to notify either Plaintiff's counsel or the Court of these meetings, or the execution of corresponding affidavits, is equally problematic, and further demonstrates the inherently suspect nature of these meetings. In light of Defendants' actions, and the risks posed to putative class members through these meetings, judicial intervention to safeguard the rights of the putative class members is proper.[5]

## IV.  **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court enter an order:

(1)  Granting the instant Motion;

(2)  Prohibiting Defendants from further communications with putative class members, without permission from the Court;

(3)  Invaliding all affidavits improperly obtained;

---

[5] Undersigned counsel was also co-lead counsel in *Tomkins v. Amedisys, Inc.*, 2014 WL 129401 (D. Conn. Jan. 13, 2014), where the defendant similarly initiated one-sided communications with putative class members as part of an effort to limit their right to relief. The *Tomkins* court granted plaintiffs' motion for protective order, finding that the defendant had "usurped the duty and authority of this Court to monitor communications with putative class members, and ensure that the information provided regarding this litigation and the putative members' rights in proceeding in the action is timely and accurate. [The defendant's] conduct has undermined the integrity of the judicial process and potentially confused and misled putative class members."

(4) Directing Defendants to provide Plaintiff's counsel with the names, telephone numbers, email addresses, and mailing addresses of all putative class members who Defendants communicated with regarding the affidavits discussed herein;

(5) Directing Defendants to provide Plaintiff's counsel with all materials sent to or received from putative class members;

(6) Directing that counsel for the parties submit to the Court an agreed-upon form of corrective notice;

(7) Directing that the notice briefly describe the lawsuit, and advise putative class members that their signed affidavits will have no legal effect, and will not impact their right to participate in this action; and

(8) Providing any other relief this Court deems necessary or appropriate.

Respectfully submitted this March 23, 2018.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Michael B. Cohen (NCSB No. 50629)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND CORRECTIVE MAILING TO ADDRESS DEFENDANTS' IMPROPER COMMUNICATION WITH PUTATIVE CLASS MEMBERS** was served in accordance with the Federal Rules of Civil Procedure on the following:

Arch Y. Stokes
GA Bar No. 683100
astokes@stokeswagner.com
John R. Hunt
jhunt@stokeswagner.com
GA Bar No. 378530
Jordan A. Fishman
jfishman@stokeswagner.com
GA Bar No. 180796
Stokes Wagner, ALC
One Atlantic Center, Suite 2400
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404.766.0076
Facsimile: 404.766.8823

Kevin M. Ceglowski
kceglowski@poynerspruill.com
N.C. State Bar No. 35703
Poyner Spruill LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27602-01801
Telephone: 919-783-6400
Facsimile: 919-783-1075

*Attorneys for Defendants*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)

16

Michael B. Cohen (NCSB No. 50629)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com

*Attorneys for Plaintiff*