IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-98-FL

| | |
|---|---|
| WAI MAN TOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HOSPITALITY VENTURES LLC doing | ) ORDER |
| business as Umstead Hotel and Spa; SAS | ) |
| INSTITUTE, INC.; NC CULINARY | ) |
| VENTURES LLC, doing business as An | ) |
| Asian Cuisine, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on plaintiff's motion for collective action and class action certification (DE 79) (the "certification motion"), and plaintiff's motion for extension of time to amend pleadings or join additional parties (DE 154) (the "motion for extension of time"). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the certification motion is granted, and the motion for extension of time is denied.

**STATEMENT OF THE CASE**

Former plaintiff Brandon Kelly ("Kelly") commenced this action on February 21, 2017, asserting claims on behalf of himself and all others similarly situated against defendants, under the Fair Labor Standards Act (FLSA) and the North Carolina Wage and Hour Act (NCWHA), based upon their alleged failure to pay adequate wages and overtime compensation, while operating a restaurant in Cary, North Carolina named Ãn Asian Cuisine ("Ãn," or the "restaurant"), between

2014 and January, 2017. Kelly sought damages for unpaid minimum wages; overtime compensation; liquidated and statutory damages; as well as fees, costs, and interest.[1]

On February 22, 2017, Kelly filed a consent to join the suit as a "named plaintiff," and he filed a consent to join the suit by current plaintiff Wai Man Tom ("Tom") as an opt-in plaintiff. Between May 9 and May 15, 2017, Kelly filed six additional consents to join the suit by the following individuals as opt-in plaintiffs: Shelley Thorne ("Thorne"),[2] Elaina Tanski ("Tanski"), Evelyn Hunter ("Hunter"), Gregory J. Evenson II ("Evenson"), Deion Dorsey ("Dorsey"), and Anne-Yael Okale-Weeks ("Weeks").

On September 5, 2017, the court allowed in part Kelly's motion to amend the complaint to substitute Tom for Kelly as plaintiff and to add new factual allegations.[3] In his first amended complaint, filed September 8, 2017, which is the operative complaint in this action, plaintiff asserts claims on behalf of himself and opt-in plaintiffs (hereinafter, collectively, "party plaintiffs"), as follows.

In his first claim for relief ("Count One"), plaintiff asserts defendants improperly took a "tip credit" by using an invalid "tip pool" comprised of employees who did not "customarily and regularly receive tips," and thus failed to pay party plaintiffs the required minimum wage of $7.25

---

[1] Former plaintiff Kelly also asserted a retaliation claim, and plaintiff asserted a retaliation claim in amended complaint. This court, however, dismissed the retaliation claim upon defendant's motion for summary judgment on December 18, 2018, and the court of appeals affirmed that dismissal on November 24, 2020.

[2] The parties filed a stipulation of dismissal pertaining to opt-in plaintiff Thorne on February 5, 2018.

[3] In the same order, the court denied the motion to amend insofar as it sought to add an allegation to the retaliation claim that defendants "contacted law enforcement, and/or threatened to pursue criminal charges, against Opt-In Plaintiff Kelly, in an effort to pressure him to voluntarily dismiss this lawsuit, and/or have his counsel withdraw from the matter, in order to retaliate against him for this lawsuit." Kelly v. Hosp. Ventures LLC, No. 5:17-CV-98-FL, 2017 WL 3880318, at *6 (E.D.N.C. Sept. 5, 2017). The court also denied the motion to amend insofar as it sought to continue claims against former defendant Ann B. Goodnight ("Goodnight"), and the court dismissed Goodnight. See id.

per hour, in violation of the FLSA, 29 U.S.C. §§ 203(m) & 206. (Compl. ¶¶ 94-96).[4] Plaintiff asserts that defendants' failure to pay minimum wage was willful, because defendants previously internally investigated a similar practice and were subject to a similar lawsuit pertaining, in part, to alleged improper tip credit practices.[5]

In his second claim for relief ("Count Two"), plaintiff asserts defendants failed to pay party plaintiffs overtime wages of $10.88 per hour for all hours worked over 40 in a single workweek, in violation of FLSA, 29 U.S.C. § 207, on the same basis as Count One, where plaintiff asserts defendants willfully used an invalid "tip credit" practice. (Compl. ¶¶ 110-113).

In his third claim for relief ("Count Three"), plaintiff asserts defendants willfully took invalid or unauthorized deductions from wages, in violation of the NCWHA, N.C. Gen. Stat. §§ 95-25.6 and 95-25.8, based upon the invalid "tip pool" as asserted in Counts One and Two. Plaintiff also asserts that defendants failed to pay party plaintiffs for all paid time off (PTO) hours due as part of their final paycheck, upon closure of the restaurant, and failed to continue insurance benefits for the final pay period, following closure of the restaurant, in violation of the NCWHA, N.C. Gen. Stat. §§ 95-25.6.

On October 10, 2017, the court entered case management order providing for bifurcated discovery, with a Phase I of bifurcated discovery addressing issues of conditional collective action certification and class certification, with some expansion to accommodate discovery regarding whether plaintiff and any potential party plaintiffs are subject to an exemption from overtime pay set forth in 29 U.S.C. § 207(i) (the "§ 7i exemption"). The court set a January 29, 2018, deadline

---

[4] Hereinafter, all citations to the complaint ("Compl.") are to the first amended complaint, unless otherwise specified.

[5] In particular, a prior lawsuit raising claims under the FLSA and NCWHA against North Carolina Culinary Ventures, LLC, resolved with settlement in 2011. See Buckner, et al v. North Carolina Culinary Ventures, LLC et al, 5:10-CV-583-D (E.D.N.C., Feb. 10, 2011).

3

for filing any motion for leave to join additional parties or to otherwise amend the pleadings. The court set a February 28, 2018, deadline for Phase I discovery, and a deadline of March 31, 2018, for plaintiff to file a certification motion. The court did not set any separate deadline for dispositive motions. In addition, the court stated that "Determination of scope and limitations of Phase II discovery shall be determined following the court's ruling on any [certification] motion." (DE 20 at 2).

Plaintiff filed the instant certification motion on March 15, 2018, seeking conditional certification of an FLSA collective action consisting of:

> [I]ndividuals who have worked for Defendants (either as separate or joint employers), at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b) until January 30, 2017,[6] who were non-exempt employees paid a direct hourly wage of less than the minimum wage, and who were required to participate in ÃN Asian Cuisine's illegal mandatory tip pool, including, but not limited to, servers, server assistants, runners, and bartenders[.]

(Pl's Mem. (DE 80) at 10).[7] Plaintiff also seeks certification of a NCWHA class consisting of:

> [A]ll individuals who have worked for Defendants (either as separate or joint employers), at any time within the two (2) year period prior to the filing of this lawsuit until January 30, 2017, who were non-exempt employees paid a direct hourly wage of less than the minimum wage, and who were required to participate in ÃN Asian Cuisine's illegal mandatory tip pool, including, but not limited to, servers, server assistants, runners, and bartenders[.]

(Id. at 11).[8]

---

[6] In his proposed notice, plaintiff defines the proposed FLSA collective action as including qualifying individuals "who were employed by Defendants at any time from **[three years prior to the entry of the Court's Order]** to the closure of the restaurant on January 30, 2017." (DE 80-8 at 3) (emphasis in original). The originally proposed time period reasonably is subject to revision as discussed in more detail herein.

[7] Page numbers in citations to documents designated by docket entry ("DE") number correspond to page numbers specified by the court's electronic case filing ("ECF") system, and not to page numbers showing on the face of the document, if any.

[8] In his proposed notice, plaintiff defines the proposed NCWHA class as including qualifying individuals "who were employed by Defendants at any time between February 22, 2015 and January 30, 2017." (DE 80-8 at 3).

In support of the certification motion, plaintiff relies upon his deposition and depositions of opt-in plaintiffs Kelly, Dorsey, and Weeks; depositions of former employees of the restaurant, Keely Gleespen ("Gleespen") and David Clore ("Clore"); deposition of former Human Resources manager for The Umstead, Rex Pysher ("Pysher"); a proposed notice; the restaurant's employee handbook; plaintiff's and opt-in plaintiff Kelly's pay stubs; the restaurant's tip pool policy and tip pool summaries; photographs of the sushi bar at the restaurant; restaurant job position descriptions; and counsel's firm resume.

On May 1, 2018, defendants responded in opposition to plaintiff's motion for certification, relying upon a declaration of Clore. Plaintiff replied in support of the motion for certification on May 31, 2018.

On December 18, 2018, the court denied as moot the instant certification motion. See Tom v. Hosp. Ventures LLC, 355 F. Supp. 3d 329, 354 (E.D.N.C. 2018). Instead, the court granted summary judgment in favor of defendants and dismissed all of plaintiff's claims as a matter of law. Id. In so holding, the court determined that plaintiff and similarly situated employees received automatic gratuities that entitled defendants to invoke a statutory exemption to the FLSA's requirements—29 U.S.C. § 207(i) ("the 7(i) exemption"). Id. at 346. The court held that the automatic gratuities satisfied the requirements of the 7(i) exemption for most weeks at issue and, for those that it did not, the tip pool was valid as a matter of law. Id. at 352.

Over two years later, on January 15, 2021, the court of appeals issued its mandate, affirming in part, vacating in part and remanding the district court's December 18, 2018, order. In particular, in pertinent part, the court vacated the district court's determination regarding the application of the 7(i) exemption and its determination that the tip pool was valid as a matter of law. See Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1031, 1038-1043 (4th Cir. 2020).

By contrast, the court of appeals affirmed the district court's determination on two "sub-issues": 1) "that the automatic gratuities are not tips under the FLSA," id. at 1038; and 2) "Sushi Chef Helpers . . . meet the criteria of valid tip pool participants." Id. at 1041-1042.⁹

In remanding, the court of appeals noted that "any further consideration of the validity of the tip pool shall be based on evidence related to [Nicholas] Papas and not the Sushi Chef Helpers." Id. at 1042. The court of appeals also stated:

> [W]e remand the case to the district court to consider whether the automatic gratuities qualify as commissions under the 7(i) exemption as we have explained and, if so, to what extent they satisfy Ãn's overtime obligations. In so doing, we do not intend to limit any other ways in which Ãn can satisfy its FLSA obligations. Ãn may rely on other avenues of FLSA compliance other than the 7(i) exemption as this case proceeds on remand. For example, it may contend that the automatic gratuities are "service charges." . . . . And service charges "may be used in their entirety to satisfy the monetary requirement of the [FLSA]" if they "are distributed by the employer to its employee." Id. § 531.55(b). Therefore, the "service charges" category of compensation may form an independent basis for satisfying Ãn's FLSA obligations.

Id. at 1039–40.

Upon issuance of the mandate, the court directed the parties to confer and file a joint status report setting forth the parties' joint or separate positions on deadlines for discovery and other case activities, including but not limited to briefing on the certification motion. With respect to the certification motion, plaintiff sought ruling on the basis of briefs already filed, while defendants sought an opportunity to revise its opposition brief. Both parties agreed that in the event the certification motion is granted, "the Parties should meet and confer regarding any areas of dispute, including, but not limited to, the proposed Notice and forms." (DE 147 at 3, 5). The parties proposed diverging positions on Phase II discovery and dispositive motions.

---

⁹ As noted previously, the court of appeals also affirmed this court's dismissal of plaintiff's retaliation claim. See 980 F.3d at 1042-1043.

6

In its amended case management order, entered February 22, 2021, the court stayed case activities to allow the parties to engage in mediation. The court directed that, if mediation concluded unsuccessfully, the court would lift the stay and reopen and submit for decision plaintiff's certification motion, without opportunity for further briefing. The court then set forth terms and conditions governing Phase II discovery, to commence after the court's ruling on the certification motion. The court set a deadline for dispositive motions of April 29, 2022.

Mediation concluded with impasse, as noticed on April 13, 2021, and the court reopened the case and the certification motion. The next day, plaintiff filed the instant motion for extension of time. Plaintiff filed a notice of supplemental authority in support of the certification motion, on April 22, 2021, and the certification motion was submitted for decision. Defendant responded in opposition to plaintiff's motion for extension of time on May 4, 2021, and plaintiff replied on May 18, 2021.

**COURT'S DISCUSSION**

A.   FLSA Certification

The statute governing FLSA collective actions, 29 U.S.C. § 216(b), provides, in pertinent part:

> An action to recover the liability prescribed in the [FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Accordingly, there are two requirements for maintenance of such an FLSA action, also known as a "collective action": 1) the plaintiffs who are joined in the action must be "similarly situated"; and 2) they must opt in by filing their consent to sue with the court. Id.; Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).

Although the statute does not set forth a process for certifying the members of a collective action, "[l]ower courts have borrowed class-action terminology to describe the process of joining co-plaintiffs under 29 U.S.C. § 216(b)," despite the "significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b)." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 n. 1 (2013).

Ordinarily, district courts have followed a two-stage process for certifying members of an FLSA collective action. First, at the notice stage, early in a case, the named plaintiffs may seek "conditional certification" based upon a limited record, including approval of a notice to putative collective action members of their right to opt in. Id. at 70. A final determination on certification is made later, typically after discovery but before trial, when the court has available to it substantially more information. See, e.g., Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 515 (2d Cir. 2020); Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017).

The notice stage, subject of the instant certification motion, is grounded in the recognition by the United States Supreme Court, in Hoffman-La Roche, that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. at 169. "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively," and "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." Id. at 170, 173.

"A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." Id. at 170. "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority

8

Case 5:17-cv-00098-FL   Document 158   Filed 06/03/21   Page 8 of 18

to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. (citing Fed. R. Civ. P. 83). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id.

The statute does not define the terms "similarly situated" for purposes of determining collective action membership. The Supreme Court and the United States Court of Appeals for the Fourth Circuit also have not announced a test to determine whether individuals are "similarly situated." This court previously has used a test adopted originally from a FLSA treatise, whereby "plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quoting Kearns, The Fair Labor Standards Act, § 18.IV.D.3); see, e.g., Vazquez-Aguilar v. Gasca, 477 F.Supp.3d 418, 422 (E.D.N.C. 2020).

Several circuit courts of appeal recently have addressed comprehensively a standard for determining whether employees are "similarly situated" for purposes of an FLSA collective action. For example, the Second Circuit held that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020). "That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id. Likewise, the Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a

9

similar issue of law or fact material to the disposition of their FLSA claims." Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018); see also O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 584-85 (6th Cir. 2009) ("[P]laintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.").

In this case, plaintiff has demonstrated for purposes of conditional certification that proposed opt-in plaintiffs are similarly situated, under any of the foregoing definitions, in multiple respects. First, they all worked for defendants at the same restaurant, under the same management. Second they all worked in positions within that same restaurant that required them to participate in the restaurant' allegedly "illegal mandatory tip pool, including, but not limited to, servers, server assistants, runners, and bartenders[.]" (Pl's Mem. (DE 80) at 10). Third, they share a similar time of employment, leading up to the closure of the restaurant on January 30, 2017.[10] Fourth, because all of these employees were subject to the same tip pool policy, they raise similar core issues of fact and law material to the disposition of their FLSA claims.

Plaintiff meets the collective action standard here by virtue of common legal issues arising from alleged failure to pay minimum ages and overtime as due, in the context of a limited universe of non-salaried employees sharing the same restaurant setting, same restaurant management, and

---

[10] Where the parties will be meeting to confer regarding the form of notice, the court does not address herein the language of plaintiff's proposed notice suggesting a time period from "three years prior to the entry of the Court's Order" to the closure of the restaurant. (DE 80-8 at 3). Of course, for the notice to have any meaning, it must be amended in its time reference because three years prior to the instant order falls after the closure of the restaurant, and even after the notice was first proposed in March 2018. The court also does not address definitively at this juncture any statute of limitations issues for any consents to sue that have not yet been filed. However, for purposes of the instant analysis, the court determines that the time scope of the proposed collective action under consideration must not be limited by delay due to the court's summary judgment order and the appeal thereof. See Cruz v. Maypa, 773 F.3d 138, 146–47 (4th Cir. 2014) (applying equitable tolling to FLSA claim); see, e.g., Weckesser v. Knight Enterprises S.E., LLC, 2018 WL 4087931, at *3–4 (D.S.C. Aug. 27, 2018) (tolling the statute of limitations where the court's consideration of a motion for conditional class certification was delayed for over a year by an interlocutory appeal); Lorenzo v. Prime Commc'ns, L.P., 2014 WL 3366073 * 3-4 (E.D.N.C. July 9, 2014) (tolling the statute of limitations where plaintiffs' motion for conditional certification was delayed by, among other things, "motions for arbitration and related appeals").

10

same general time period. Under the circumstances of this case, it would not promote efficiencies for either the court or litigants to require any putative collective action members to proceed in a separate action. Therefore, the court in its discretion grants plaintiff's motion for conditional certification.

As part of the instant motion, plaintiff seeks to have the court approve the "proposed FLSA notice of this action and the consent form." (Mot. (DE 79) at 1). In addition, plaintiffs seek an order for production of names and contact information for all putative class members and approval of a method for distribution of the notice. (Id.). The court does not address these aspects of the motion at this juncture. Where the parties now agree that, in the event the certification motion is granted, the parties will confer regarding notice issues, the court will direct the parties to so confer, as set forth in more detail at the end of this order.

B.  NCWHA Class Certification

To be certified as a class action under Rule 23, an action must satisfy four prerequisites:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, as pertinent here, the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Id. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Here, plaintiff has demonstrated his compliance with the Rule 23 requirements. With respect to numerosity, plaintiff has identified a tip pool spreadsheet produced by defendants for a single two-week pay period in June 2016 identifying 22 unique individuals as servers, server assistants or bartenders. (DE 100-15 at 7-8). In addition, defendants produced a tip pool analysis of pay and time information for plaintiff and other employees, covering approximately 96 unique individuals for the year 2015, some of whom reasonably may fall outside of the proposed class positions of servers, server assistants, runners, or bartenders. (e.g., DE 100-17 at 126). Taking these sources together, it is reasonable to infer that the number of putative class members included in the tip pool for all pay periods between February 21, 2015, and January 30, 2017, exceeds 50 individuals, given the amount of turnover that might be expected for this type of non-salaried position. This is sufficient to satisfy the numerosity requirement.

Second, with respect to commonality, plaintiff has demonstrated that there are common contentions that are capable of classwide resolution. In particular, plaintiff asserts that putative class members did not receive wages due because of the invalid tip pool. In addition, defendants assert defenses dependent upon whether service charges are sufficient to meet minimum wage and overtime requirements. Determination of the truth or falsity of these contentions will resolve

12

issues "central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350.

Defendants argue that commonality is defeated because the exemptions they assert may not apply to all putative class members for all workweeks, requiring individualized determination of damages. This does not, however, defeat commonality. The requirement that "class members have suffered the same injury" does not mean that each class member must be entitled to the same amount of damages. Wal-Mart Stores, 564 U.S. at 349; see Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 428 (4th Cir. 2003) ("[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality."). The key here is that all putative class members were in the same position, working under the same base pay and tip pool policies. Thus, if those policies resulted in insufficient pay, that is an injury common to all putative class members, regardless of whether the amount of actual damages will vary by each putative class member.[11]

Third, plaintiff has demonstrated that his claim is typical of the claims of the putative class members or defenses applicable thereto. This, again, is because plaintiff and all putative class members were subject of the same allegedly invalid tip pool. Defendants suggest that typicality is defeated because the claims of plaintiff and former plaintiff Kelly may be defeated by the application of one or more exemptions premised upon their receipt of service charges. Any asserted exemption, however, could apply equally to all putative class members, even if not for all workweeks. Moreover, defendants already had an opportunity to demonstrate that plaintiff's and opt-in plaintiffs' claims failed as a matter of law based upon an asserted exemption. Even for that

---

[11] Defendants also suggest that plaintiff may not have asserted a valid NCWHA claim, where it overlaps with plaintiff's FLSA claims. (Defs' Opp. (DE 103) at 13-14). This is not, however, an argument that defeats commonality. Indeed, it is a contention of law that would be need to be determined equally for all putative class members, thus further reinforcing the commonality of the proposed class.

13

limited subset, defendants could not demonstrate that the asserted exemption applied in all work weeks, thus requiring an analysis of the tip pool. See Tom, 355 F. Supp. 3d at 345-346.

Fourth, due to the foregoing three factors, plaintiff will fairly and adequately protect the interests of the class. Defendants suggest that plaintiff is not a proper class representative because he and former plaintiff Kelly complained about having to share tips with other servers, many of whom could be putative class members. (See Defs' Mem. (DE 103) at 16). The evidence defendants cite for this proposition, however, does not support it. Rather, it suggests only that former plaintiff Kelly complained, but not that plaintiff complained about other servers. (See Hawthorne Decl. ¶¶ 8-9 (Kelly only); James Decl. ¶¶ 19-21 (no specification); Clore Decl. ¶ 9 (Kelly only); Hunter Depo. at 60-63 (no specification); Tom Depo at 66 (no complaint)).[12] In sum, while former plaintiff Kelly may not have been a proper class representative for multiple reasons, including his prior conduct as a litigant in this case, plaintiff Tom stands in contrast as a proper representative of the class.

Having determined the prerequisites under Rule 23(a) have been met, the court next finds that the questions of law or fact common to class members predominate over any questions affecting only individual members. See Fed. R. Civ. P. 23(b)(3). This is particularly true in light of the court's earlier dismissal of plaintiff's retaliation claim, such that plaintiff now does not assert any claims apart from those available to putative class members. Likewise, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy, where all the issues raised by defendant's pay policies for customarily tipped employees can be resolved in the instant action. There is no basis to require putative class members to litigate individually

---

[12] All of the aforementioned exhibits are attached to defendants' appendix of statement of facts in support of summary judgment (DE 100), except for the Clore declaration, which is attached to defendants' response in opposition to the instant motion (DE 103).

14

Case 5:17-cv-00098-FL   Document 158   Filed 06/03/21   Page 14 of 18

their claims that may be resolved efficiently in this lawsuit, particularly where individual damages may be limited.

Finally, the court finds that plaintiffs' counsel, comprising attorneys at the Law Offices of Gilda A. Hernandez, PLLC, and Lee & Braxiel, LLP, are "best able to represent the interests of the class." Fed. R. Civ. P. 23(g). Defendants argue that Gilda A. Hernandez ("Hernandez") is not an adequate class representative, because of her history of raising "frivolous motions" in this case. (Def's Mem. (DE 103) at 16-17). While the court has made a number of rulings contrary to motions filed by counsel Hernandez on behalf of plaintiff or former plaintiff Kelly, the court does not agree that she has advanced frivolous motions. Counsel Hernandez has zealously advocated for her clients in this case, and has pursued an appeal that was in part successful, and thereafter participated in mediation and advocated in favor of continuation of the instant proposed collective action and class action. Therefore, the court finds that plaintiff's counsel is an adequate class representative and is thereby appointed class counsel, in accordance with Rule 23(g).

In sum, plaintiff has demonstrated good cause for collective action certification and class action certification, of the proposed collective action and class action as set forth herein. Per the parties' joint status report, filed February 16, 2021, the parties shall confer and file, within 14 days of the date of this order, a joint notice containing proposed revised language "regarding any areas of dispute, including, but not limited to, the proposed Notice and forms." (DE 147 at 3, 5). If the parties are in agreement regarding the form of Notice and method(s) of distribution of the same, the parties shall propose a consent order approving the same. If there is disagreement, the parties shall set out their respective positions and proposed orders in the joint notice filed. Thereupon, the court will enter such further order as is warranted regarding distribution of notice.

15

Case 5:17-cv-00098-FL   Document 158   Filed 06/03/21   Page 15 of 18

C.     Motion for Extension of Time

Plaintiff moves for an extension of time to file a motion to join additional parties or to amend pleadings, up to thirty days following the close of the notice period in the event the court, as here, grants plaintiff's certification motion. This court previously set January 29, 2018, as the deadline for filing "[a]ny motion for leave to join additional parties or to otherwise amend the pleadings," in its October 10, 2017, case management order. (DE 70 at 6).

Under Rule 16, a scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). Although the United States Court of Appeals for the Fourth Circuit has not addressed in a published opinion all the factors guiding the good cause analysis, this court has recognized previously that "the primary consideration is the diligence of the moving party." Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 784 (E.D.N.C. 2011) (quoting Montgomery v. Anne Arundel County, 182 Fed. Appx. 156, 162 (4th Cir. 2006)).

"'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,'" and "'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" Cook v. Howard, 484 F. App'x 805, 815 (4th Cir. 2012) (alterations in original) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civ. § 1522.2 (3d ed. 2010)). The burden is on the "movant . . . [to] demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order." United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007).

Here, plaintiff has not demonstrated good cause for extending the deadline for filing motions for leave to join additional parties or to amend the pleadings. The original deadline

16

expired January 29, 2018, three months into Phase I discovery, and one month before the close of Phase I discovery on February 28, 2018. Plaintiff has not pointed to any information discovered after the original deadline that justifies reopening the deadline for filing motions for leave to join additional parties or to amend the pleadings.

Plaintiff argues that he was not able to take the deposition of defendants' human resources manager prior to the original deadline, and that the parties did not take any merits-based discovery before the original deadline. The mere fact that further discovery followed the original deadline, or that further discovery now is anticipated, however, does not demonstrate good cause for reopening the deadline. Rather, plaintiff must show that the further discovery has or will raise new facts that could not, with diligence, be addressed before the original deadline.

Plaintiff "currently anticipates only seeking to remove claims dismissed by this Court and provide clarifying language and underlying facts regarding claims presently pending before the Court." (Pl's Reply (DE 157) at 6; see Mot. (DE 154) at 4). As an initial matter, a legal ruling by this court, affirmed by the court of appeals, does not constitute new information that justifies altering the amendment deadline. See, e.g., Howard v. Inova Health Care Servs., 302 F. App'x 166, 181 (4th Cir. 2008) (affirming denial of motion to amend where "[Plaintiff] has not shown that his proposed amendment to add an ADA claim resulted from the discovery of new facts that prompted his motion to amend"). With respect to remaining "clarifying language and underlying facts," (Pl's Reply (DE 157) at 6), plaintiff has not shown that such clarifications and underlying facts were not known before the original deadline. Moreover, in the form presently advanced, plaintiff's motion lacks the specificity needed for the court to find good cause for changing the deadline.

17

Plaintiff also argues that defendants have failed to assert that an extension of time would cause any prejudice, given the discovery period remaining in this case. However, the cases cited by plaintiff regarding prejudice and delay in moving to amend are inapposite where they apply the Rule 15 standards for amendment, not the Rule 16 standard for modifying a scheduling order deadline. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (Rule 15 analysis); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (same); Harding v. Kellam, No. 97-1360, 1998 WL 406866 *2 (4th Cir. July 15, 1998) (same). It is not defendants' burden to show undue prejudice and delay at this juncture, but rather plaintiff's burden to show timeliness and diligence. See Montgomery, 182 Fed. Appx. at 162.

In sum, plaintiff has not demonstrated good cause to reopen the deadline for filing motions for leave to join additional parties or amend the pleadings. Therefore, plaintiff's motion for extension of time must be denied.

## CONCLUSION

Based on the foregoing, plaintiff's certification motion (DE 79) is GRANTED, and plaintiff's motion for extension of time to amend pleadings or join additional parties (DE 154) is DENIED. The parties are DIRECTED to confer and file, within 14 days of the date of this order, a joint notice regarding proposed notice and forms, as specified in more detail herein.

SO ORDERED, this the 3rd day of June, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge

18

Case 5:17-cv-00098-FL   Document 158   Filed 06/03/21   Page 18 of 18