IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| WAI MAN TOM, on behalf of himself and all others similarly situated, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) CA No. 5:17-CV-98-FL ) |
| HOSPITALITY VENTURES, LLC, d/b/a UMSTEAD HOTEL AND SPA; SAS INSTITUTE, INC.; NC CULINARY VENTURES, LLC, d/b/a AN ASIAN CUISINE, | ) ) ) ) ) ) |
| *Defendants.* | ) ) |

### ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND CLASS ACTION SETTLEMENT, ORDER OF DISMISSAL WITH PREJUDICE

This matter is before the Court on the Unopposed Motion for Final Approval of the Collective and Class Action Settlement, (Dkt. 234). Also, before the Court are the Unopposed Motion for Attorneys' Fees and Reimbursement of Expenses (Dkt. 223), and the Unopposed Motion for Preliminary Approval of Service Award, (Dkt. 225).

Named Plaintiff Wai Man Tom ("Plaintiff" or "Plaintiff Tom"), Opt-in Plaintiffs, and Rule 23 class members were employed as servers for Defendants at all locations, from approximately May 2015 to January 30, 2017. Plaintiff Tom was employed at Ãn Asian Cuisine location from May 29, 2012, until January 30, 2017. Plaintiff asserts that Defendants jointly employed Plaintiff, opt-in Plaintiffs, and Fed. R. Civ. P. 23 ("R.23") class members (collectively "Plaintiffs") and failed to compensate Plaintiffs as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.*, by: (1) illegally withholding tipped wages by requiring tipped employees to share

their tips with non-service employees pursuant to 29 U.S.C. §§ 203(m) and 206; (2) improperly taking a tip credit against the minimum wage of tipped employees; (3) failing to pay the proper overtime rate for hours worked in excess of 40 per week pursuant to the FLSA, 29 U.S.C. § 207; (4) failing to pay Plaintiffs all owed, earned, and promised wages and benefits pursuant to N.C. Gen. Stat. § 95-25.6; and (5) invalid or unauthorized deductions from Plaintiffs' wages pursuant to N.C Gen. Stat. §§ 95-25.6 and 95-25.8. More specifically, Plaintiffs allege Defendants failed to pay Plaintiffs all owed, earned, and accrued minimum wages, and/or overtime wages, in violation of the FLSA, and violation of the FLSA was willful. Furthermore, Plaintiff alleges Defendants intentionally refused to pay all lawful wages on their regular pay date and took tips from Plaintiffs to lower their overhead costs and pay other employees in violation of the NCWHA.

In addition to extensive and meaningful discovery, this case has already involved extensive litigation over a variety of motions. In light of the close of Phase II of discovery and impending dispositive motion briefing deadlines, the Parties agreed as to the potential value of attending a fourth mediation in the form of a Court-hosted settlement conference before the scheduled deadlines. On June 28, 2022, this Court hosted the Parties' first settlement conference. After a full day and long evening of negotiations, (almost twelve hours), the Parties were able to successfully reach an agreement through the assistance of Magistrate Judge Gates. After further negotiations on various details, the Parties reached the Settlement Agreement described below on July 29, 2022. Dkt. 222-1.

On July 29, 2022, Plaintiff filed his Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Settlement Agreement of Class and Collective Action and Release of Claims, to (1) provisionally grant preliminary approval of the proposed class and collective action settlement (the Parties' "Settlement Agreement"); (2) approve the appointment

of Angeion Group LLC, as settlement administrator; and (3) approve the proposed notice of the settlement and claim form.

On August 18, 2022, this Court granted preliminary approval. Dkt. 229. On August 24, 2022, Plaintiff moved this Court to change the Settlement Administrator from Angeion Group LLC to CPT Group LLC. Dkt. 231. This Court granted Plaintiff's request on August 30, 2022, and amended its order granting preliminary approval, subject to further consideration thereof at the Final Approval Hearing: (1) the Parties' Settlement Agreement; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Settlement Agreement; and (3) the appointment of CPT Group as the Settlement Administrator. *See* Dkt. 233.

Also, consistent with the Parties' Settlement Agreement, the Court set the deadline for members of the certified class to opt out of the settlement or submit an objection. Dkt. 233. Pursuant to Rule 23(e) of the Fed. R. Civ. P., the Court scheduled a Fairness Hearing scheduled for November 29, 2022, at 10:30 a.m., to determine whether the proposed Settlement Agreement is fair. *Id.*

Having considered the Plaintiff's Unopposed Motion for Final Approval, their Unopposed Motion for Attorneys' Fees and Expenses, their Unopposed Motion for Service Awards, and the supporting declarations, the oral argument presented at the fairness hearing, and the complete record in this action, for the reasons set forth therein and stated on the record at the November 29, 2022, fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. Plaintiff's Unopposed Motion for Final Approval (Dkt. 234) is GRANTED and finally approves the settlement as set forth in the Parties' Stipulation and Settlement Agreement, (Dkt. 222-1) (the "Settlement Agreement).

## Final Settlement Approval

2.  "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *see also Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan 8, 2020); *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the action context."); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 Newberg on Class Actions § 13.44, n1 (5th ed. Dec. 2019) (collecting cases).

3.  The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-0400-BR, 2009 WL 2208131, at 23 (E.D.N.C. July 22, 2009) (citing e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

## Procedural Fairness

4.  The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See West v. Const'l Inc.*, No., 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("The [s]ettlement was not hastily arrived at. Indeed, the [s]ettlement followed lengthy discussions and considerable dialogue between the [p]arties, as well

4

as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 294047, at *4 (D. Md. June 13, 2013) (unpublished); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (unpublished) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation. . . [and] enlisted the services of an experienced employment [law] mediator.

5. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial discovery, and reached a settlement after multiple failed mediations and a successful settlement conference between the Parties with the assistance of Magistrate Judge Gates. *See generally* Dkt. 222-1.

6. On June 28, 2022, the Parties participated in a day long court-hosted settlement conference with a highly regarded, skillful, and experienced United States Magistrate Judge. Dkt. 222-1, at 12. Over the next several weeks, the Parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See id.* at 44 (signed July 29, 2022). These arm's-length negotiations involved counsel and a magistrate judge well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *See West*, WL 1146642, at *5 ("[T]here is no evidence in the record before the court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the parties or

their attorneys at the terms of this Settlement.").

## Fair, Adequate, and Reasonable

7. The settlement is substantively fair and meets all factors that illuminate this analysis. *See Sharm Farms*, 917 F.3d at 299; *Berry*, 807 F3d at 614; *In re Jiffy Lube Sec., Litig.*, 927 F.2d at 158-59; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 452 (2d. Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

8. The factors this Court considers are: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. *See Berry*, 807 F3d at 614; *Scardelletti v. Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam) (unpublished); *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158-59.

9. Litigation through trial would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

10. The class members' reaction to the settlement was positive. The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed such individuals of their right to object to or exclude themselves from the Settlement and explained how to do so. No Settlement Class Member objected to the proposed settlement, and no settlement class member requested exclusion. This favorable response demonstrates the class approves the settlement, which further supports final approval. *See e.g., West*, 2018 WL 1146642, R *6 ("No objections have been filed in this case. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (internal quotations omitted); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) (unpublished); *In*

6

*re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

11. The parties have completed voluminous discovery, which supports settlement. The proper question is whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." West, 2018 WL 1146642, at *4; *see Riddle v. City of Anderson*, No. 8:12-cv-03480-TMC, 2015 WL 12830369, at *6 (D.S.C. Jan. 26, 2015) (unpublished). They did. The parties engaged in extensive written discovery. Plaintiff conducted three (3) 30(b)(6) depositions, five (5) individual depositions of Defendants' witnesses, and shared an extensive amount of information during the duration of Phase I and II discovery. Defendants produced payroll records, paystubs, and restaurant documents during both phases of discovery. Class counsel have also had the benefit of both formal and informal discovery from the opt-in Plaintiff and Rule 23 class members. Moreover, briefing on Plaintiff's motion for conditional and class certification, as well as the appeal before the Fourth Circuit, provided Plaintiff and his counsel with a greater wealth of information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor weighs in favor of final approval.

12. "In complex, multi-year class actions, the risks inherent in the litigation are immense*." In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *Id.*, 2015 WL 12850547, at *12 (D.S.C. July 22, 2015) (unpublished) (quotation omitted). Plaintiffs have to overcome probable attempts to decertify the FLSA collective action and certification of the Rule 23 Classes, as well as summary judgment. As other cases predicated on similar theories of liability suggest, this threat is real. Moreover, Plaintiff

7

would still have to overcome Defendants' arguments including, for example, whether Defendants were "joint employers," whether certain plaintiffs were time-barred from recovering damages, whether Defendants owed unpaid wages, and/or whether amounts withheld from plaintiff's wages were proper deductions under the FLSA.

13. There is no evidence whether Defendants could withstand a greater judgment. However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Thus, given that all of the factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

14. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (quotation omitted). This Court considers (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *See Sharp Farms*, 917 F.3d at 299; *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159; *West*, 2018 WL 1146642, at *4. The first two factors are the most important. *See Sharp Farms*, 917 F.3d at 299. As discussed, the Settlement Agreement meets these factors.

## APPROVAL OF THE FLSA SETTLEMENT

15. The Court hereby approves the FLSA collective action settlement.

16. Settling parties routinely seek judicial approval of a proposed settlement to ensure

8

fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon v. Olivier Cheng Catering & Events LLC,* 08 Civ. 8713 (PGG), U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. *Lynn's Food Stores,* 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15.

17. Here, the settlement was the result of a formal mediation at a court host-settlement conference, involving arm's length settlement negotiations. *See* Dkt. 222-1, at 6. During the entire process, Plaintiff and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves an actual dispute under the circumstances supporting a finding that is fair and reasonable.

18. The Court hereby approves the Rule 23 class action settlement.

19. Courts generally approve Rule 23 class action settlements when they are fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). After due consideration and inquiry into the circumstances surrounding the proposed settlement of Plaintiff's collective FLSA claims and Rule 23 class claims under the NCWHA against Defendants, and review of the Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval as it reflects a reasonable compromise of a bona fide dispute. The Court finds and concludes that the proposed settlement is just and reasonable and in the best interest of the Parties. The Court further finds the settlement to have been reached in good faith. The Court further finds that the Parties' Settlement Agreement is fair, reasonable, and adequate pursuant to

Fed. R. Civ. P. 23 (e). The Court finds that the approved class representative, Wai Man Tom and Class Counsel have adequately represented the class and that the settlement proposal was negotiated at arm's length. The Court further finds that the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) the Parties' Settlement Agreement. The Court also finds that the settlement proposal treats class members equitably relative to each other. See Fed. R. Civ. P. 23(e)(2)(A)-(D).

## DISSEMINATION OF NOTICE

20. Pursuant to the Court's order preliminarily approving the Parties' settlement, (Dkt. 233) and its order dated August 30, 2022, all Rule 23 Settlement Members, were sent court-approved notices by email and first-class mail at his or her last known address.

21. The Notices fairly and adequately advised Settlement Class Members of the terms of the settlement, as well as the right of Rule 23 Settlement Class Members to opt-out of or to object to the settlement, and to appear at the fairness hearing conducted on November 29, 2022, at 10:30 a.m. Settlement Class Members were provided with the best notice practicable under the circumstances.

22. The Notices and their distribution met with all constitutional requirements, including due process.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO PLAINTIFF AND EARLY OPT-IN

23. The court hereby grants Plaintiff's Motion for Attorneys' Fees, inclusive of and accounting for litigation expenses as well, and awards Class Counsel $1,000,000.00.

24. Rule 23 and the FLSA both allow for the award of reasonable attorney's fees and

10

Case 5:17-cv-00098-FL    Document 240    Filed 11/29/22    Page 10 of 17

expenses. *Hall v. Higher v. One Machs., Inc.*, No. 5-15-CV670-F, 2016-WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016). Rule 23(h) provides in relevant part that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The FLSA contains a fee-shifting provision: the court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

25. The Fourth Circuit generally uses the lodestar method for determining a reasonable fee in an FLSA settlement, defined as a reasonable hourly rate multiplied by hours reasonably expended. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 411-12 (D. Md. 2014); *See Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir.1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."); *Fegley v. Higgins,* 19 F.3d 1126, 1134–35 (6th Cir.1994) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights"). The Fourth Circuit has accordingly recognized that "[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation." *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 328 n. 20 (4th Cir.2006) (citing *Mercer v. Duke Univ.,* 401 F.3d 199, 211–12 (4th Cir.2005) (affirming $349,244 in attorney's fees awarded in Title IX suit yielding only nominal damage award). The same principle applies to FLSA cases. *Cf. Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 558 (7th Cir.1999).

26. The Fourth Circuit considers twelve factors to evaluate the overall reasonableness of an award of attorney's fees: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases." *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Mullinax*, 2014 WL 12774925, at *11 (applying the *Barber* factors to award attorney's fees in a hybrid FLSA and Rule 23 action).

27. Class Counsel's request for a fee of $1,000,000 is reasonable following consideration of the twelve *Barber* factors. Class Counsel spent over 3,200 attorney hours and 411.6 hours of non-attorney time,, a significant investment of labor and resources. Dkts. 236, ¶¶ 8-9. Class Counsel conducted extensive factual and legal research to determine the merits and scope of the claims, damages, and certain procedural matters. This research included prelitigation investigations, interviews with both named and opt-in Plaintiffs, class members, deposition preparation, written discovery, extensive briefing prior to filing the motion for conditional and class certification, in addition to, filing motions for a protective order and miscellaneous relief, as well as a successful appeal before the Fourth Circuit. *See Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018) ("[T]he novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel has to address procedurally and substantively complex FLSA issues," such as a question addressed by little

Fourth Circuit caselaw.") The court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $1,000,000, in accordance with the terms of the Settlement Agreement.

28. Additionally, Class Counsel's request for $1,000,000 of the proposed Settlement Fund is less than their calculated "lodestar," which is currently greater than $1,400,000.00. As such, a lodestar multiplier is not necessary. Lodestar multipliers of less than 1, as is the case here, have been found to be "modest" in the Fourth Circuit, further supporting Class Counsel's requested award. *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *5 (M.D.N.C. Dec. 18, 2018) (finding a multiplier of 1.8 "well within the normal range of lodestar multipliers); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar).

29. No Class Member objected to Class Counsel's requested Fees, which also provides support for Class Counsel's fee request. *See e.g., In re Outer Banks Power Outage Litig.*, 2018 U.S. Dist. LEXIS 161714, at *9.

30. The attorneys' fees and the amount in reimbursement of expenses shall be paid from the Gross Settlement Fund in accordance with the Settlement Agreement.

31. The Court finds reasonable an award for Named Plaintiff Wai Man Tom in the amount of $35,000.00 for his service award as Named Plaintiff/Class Representative for the asserted FLSA/Rule 23 collective/class wage and hour claims and his committed to this lawsuit and its continued litigation (i.e., engaging in written discovery, preparing for mediation and engaging in multiple settlement negotiations for the benefit of the Settlement Class and Settlement Collective, and sitting for a deposition); Opt-in Plaintiff Brandon Kelly in the amount of $35,000

respectively, for his substantial contributions made to the case; Opt-in Plaintiff Gregory Evenson in the amount of $10,000 respectively, for his committed efforts and contributions made to the case; Opt-in Plaintiffs Elaina Tanski, Deion Dorsey, Anne Yael Okale Weeks, and Justin Dillon in the amount of $7,500 respectively, for their assistance during the litigation, including providing additional information at various stages during the litigation, sitting for depositions/providing testimony, and/or providing written discovery responses; Opt-in Plaintiff Joseph Hardin in the amount of $5,000 for appearing for a deposition and providing responses to Defendants' written discovery; and for Rule 23 Class Members Taylor Rogan and Singh Hang "Ruth" Lee, $2,500 each for responding to written Defendants' written discovery requests and sitting for a deposition. The service awards are in recognition of these Plaintiffs' assistance to Class Counsel and reflect their contribution to achieving the Settlement on behalf of the Rule 23 Settlement Class and all Participating FLSA Collective Members. These amounts shall be paid from the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement.

32. Consistent with the terms of the Settlement Agreement, the "Effective Date" of the settlement shall be as defined in the Settlement Agreement. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## SETTLEMENT ADMINISTRATOR

33. The Court confirms its prior Order appointing CPT Group as the Settlement Administrator in this case, Dkt. 233, and the duties CPT Group was previously ordered to perform therein in conjunction with any order granting final approval to the Settlement in this action.

34. Consistent with the Court's prior Order appointing CPT Group as Settlement Administrator, CPT Group shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any

amounts form the Qualified Settlement Fund it established in connection with this Settlement.

35. Within five (5) days after the Effective Date as defined in the Settlement Agreement, the Settlement Administrator will establish and maintain a qualifying designated settlement fund pursuant to Section 468(B) of the Internal Revenue Code ("Qualified Settlement Fund" or "QSF") in accordance with the terms of the Settlement Agreement.

36. No later than ten (10) calendar days after the Effective Date, Defendants shall deposit into the Settlement Fund the necessary portion of the Gross Settlement Amount required to satisfy the payment of the Gross Settlement Amount, including Settlement Payments to Authorized Claimants, the approved Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, the approved Service Awards, and the costs of settlement administration.

37. Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, as authorized by the Court, will be paid by the Settlement Administrator from the Gross Settlement Amount within five (5) calendar days after Defendants deposit the amounts into the Settlement Fund.

38. The Settlement Administrator will pay the Named and Select Opt-In Plaintiffs' Service Awards ordered by the Court directly to the individuals ordered by the Court to receive such payments within five (5) calendar days after Defendants deposits these amounts into the Settlement Fund.

39. Within fifteen (15) calendar days of Defendants' payment of the Gross Settlement Amount described in Part V.B.1. of the Settlement Agreement (Dkt. 222-1) is received by the Settlement Administrator, the Settlement Administrator will issue Settlement Payments via checks sent by U.S. Mail to each Authorized Claimant. Those members of the Settlement Class who have properly and timely opted out of the Settlement are not Authorized Claimants and are not entitled to a Settlement Payment.

40. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who did not timely exclude themselves from the settlement, Opt-in Plaintiff, and the Named Plaintiff shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement. Specifically, as stated in the Settlement Agreement, this means:

> As of the Effective Date, Named Plaintiff, Select Opt-In Plaintiffs, and Authorized Claimants and Members of a Settlement Class ("Releasors") hereby forever completely settle, compromise, release, and discharge Defendants from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Releasor has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages arising on or before the date of the Court's final approval of the settlement, except to the extent that any such claim may not be waived as a matter of law. The claims released by the Releasors specifically include without limitation (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, tips received, deductions to wages made, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind, including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq.; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records. The settlements, compromises, releases, and discharges described in this paragraph shall extend to any such claims that arose at any time up to the date on which the Court grants final approval of the settlement. The settlements, compromises, releases, and discharges described in this paragraph have no application to any claim by any Releasor, except for Named and Opt-in Plaintiff (who have received service awards and therefore do release any and all claims whatsoever), for discrimination in violation of state or federal law, or any claim of any type arising on or after the date on which the Court grants preliminary approval of this Agreement. In addition, the Named Plaintiff and Select Opt-in Plaintiffs will

16

release all known and unknown claims of any type against the Defendants, except to the extent that any such claim may not be waived as a matter of law. This Release has no application to any claim of any type arising on or after the Effective Date of this Agreement.

Dkt. 225-1, § VI.A.I.

41. Pursuant to the Settlement Agreement, the Named Plaintiff, Opt-in Plaintiffs, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant, and are enjoined from pursuing any claim released as part of this settlement. (Dkt. 225-1, § V(A)(1)), with the exception that for those Rule 23 Settlement Class Members who did not opt into the FLSA action, their FLSA claims are preserved. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

SO ORDERED this 29th day of November, 2022.

_____
The Honorable Louise W. Flanagan
United States District Judge